**SILLS CUMMIS RADIN TISCHMAN**
**EPSTEIN & GROSS, P.A.**
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

Counsel for Plaintiffs Zev and Linda Wachtel
(Other counsel listed on last page)

**FILED**

MAR 12 2003

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ZEV AND LINDA WACHTEL, individually and
on behalf of their minor children, TORY,
JESSE and BRETT WACHTEL,
and on behalf of all others similarly situated,

   Plaintiffs,

-against-

GUARDIAN LIFE INSURANCE COMPANY
OF AMERICA, PHYSICIANS HEALTH
SERVICES, INC. and PHYSICIANS HEALTH
SERVICES OF NEW JERSEY, INC.

   Defendants.

Index No. 2:01-cv-4183 (FSH)

**SECOND AMENDED COMPLAINT**

**CLASS ACTION**

---

  Plaintiffs Zev and Linda Wachtel ("Plaintiffs") allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation made by and through their attorneys, the allegations which appear below.

  1.  Plaintiffs, individually and on behalf of their minor children, Tory, Jesse and Brett Wachtel, bring this action pursuant to health care plans directly insured by or administered by Defendants Physician Health Service, Inc., Physician Health Services of New Jersey, Inc.

(collectively referred to herein as "PHS") and Guardian Life Insurance Company of America ("Guardian Life").

2. Plaintiffs are subscribers to a Choice health plan which is underwritten by Guardian Life, and for which PHS functions as the plan administrator. It is known as The Guardian & PHS Healthcare Solutions plan ("Guardian & PHS plan"). Zev Wachtel's employer, New Jersey Anesthesia, P.A., is considered a "small employer" because there are fewer than 50 employees. Plaintiff Zev Wachtel is considered a participant in the Guardian & PHS plan, while Plaintiff Linda Wachtel, and the Wachtel children, are considered beneficiaries of the Guardian & PHS plan. Because their plan is provided as an employee benefit by a private employer, their claims are brought under the Employee Retirement Insurance Security Act of 1974 ("ERISA").

3. Defendants offer health plans, called "Choice" plans, which for an additional premium permit subscribers to obtain health care services from physicians who have not entered into contracts with Defendants to serve as part of its provider network (referred to as "out-of-network" or "non-participating" providers).

4. Defendants' Choice plans uniformly provide that subscribers will be reimbursed a fixed percentage (usually 80%) of the "usual, customary and reasonable" (herein referred to as "UCR") fees charged by such out-of-network providers. Amounts above the UCR, as well as the patient's coinsurance amounts, are not considered toward the subscriber's annual deductible amount, nor are they considered toward the subscriber's out-of-pocket limit. Once the out-of-pocket limit is reached, Defendants must pay 100% of the actual charge or UCR, whichever is less.

5. Plaintiffs allege that PHS and Guardian Life have breached the express terms of

their Choice health care plans, and violated their disclosure obligations to their subscribers, by failing to adhere to N.J.A.C. § 11:21-7.13 ("New Jersey regulation") in instances where Defendants were obligated to do so. Through its actions, as detailed herein, Plaintiffs seek restitution or reimbursement for Defendants' unlawful UCR determinations and other appropriate equitable and legal relief.

6. Plaintiffs challenge all of Defendants' UCR determinations made for every member of the Wachtel family. Plaintiffs seek to represent all similarly situated subscribers as further defined herein.

## JURISDICTION, VENUE AND THE PARTIES

7. Plaintiffs' claims arise under ERISA § 502, 29 U.S.C. § 1132, and therefore under 28 U.S.C. § 1331 (federal question jurisdiction).

8. Venue is appropriately established in this Court under 28 U.S.C. § 1391, because Defendants conduct a substantial amount of business in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

9. Plaintiffs reside in Tenafly, New Jersey.

10. Defendant Guardian Life Insurance Company of America ("Guardian") is incorporated in New York and has its principal place of business in New York, New York.

11. Defendant Physician Health Services, Inc. is incorporated in Delaware and has its principal place of business in Connecticut. Defendant Physician Health Services of New Jersey, Inc., is incorporated in New Jersey and has its principal place of business in New Jersey (collectively with Defendant Physicians Health Services, Inc., "PHS").

12. Guardian and PHS are ERISA fiduciaries of the health plans here at issue.

3

## PLAINTIFFS' GROUP PLAN - VIOLATIONS - REMEDIES SOUGHT

13. Defendants are obligated to pay a fixed percentage of out-of-network providers' actual charges for medical services provided to subscribers and beneficiaries (usually 80%) of an allowed amount. This is often referred to as a copayment, or coinsurance. Once a subscriber reaches an out-of-pocket limit, then Defendants have agreed to pay 100% of the allowed amount. The allowed amount is the lesser of the provider's actual charge and the usual, customary and reasonable amount.

14. Plaintiffs' group health plan contains the following definition of UCR:

> Payment for covered services out-of-network is based on usual, customary and reasonable (UCR) charge limitations, except in cases of emergency. UCR is based largely on data compiled and reviewed by outside agencies, which determine customary charges within a certain geographic location. The charges will vary by provider specialty and specific service(s) rendered. UCR allows us to keep your premium at an affordable level and is used by almost all insurers for out-of-network expenses. UCR represents our 'allowed amount' or 'allowed charges' for out-of-network services.

Elsewhere in the group health plan, the following definition of UCR appears:

> With respect to Out-of-Network benefits, an amount that is not more than the usual or customary charge for the service or supply as We Determine, based on a <u>standard</u> approved by <u>the Board</u>. <u>The Board</u> will decide a <u>standard</u> for what is Reasonable and Customary for the Out-of-Network benefits under the Contract. The chosen <u>standard</u> is an amount which is most often charged for a given service by a Provider within the same geographic area. (emphasis added).

15. Upon information and belief, "the Board" in the above definition refers to the Small Employer Board. The "standard" in the above definition refers to an amount equal to or greater than the 80th percentile of the Prevailing Healthcare Charge System ("PHCS") database.

16. As set forth below, in the instances where Defendants were required to determine

UCR by complying with the New Jersey regulation (and by using a fixed percentile of the database (e.g., equal to or greater than the 80th percentile of PHCS)), Defendants failed to do so.

17. In its actions, Defendants have breached, and continue to breach, their contractual obligations to the Class. Plaintiffs seek monetary relief, and declaratory and injunctive relief, to remedy these breaches.

18. Defendants are required under ERISA to make various disclosures to subscribers, including for example accurately setting forth plan terms, explaining the specific reasons why a claim is denied in whole or in part, explaining the basis for its interpretation of plan terms, providing data and documentation, according appeals a "full and fair review", and the like.

19. The federal common law of trusts, applicable to ERISA fiduciaries, further requires that fiduciaries must deal honestly with subscribers, and must adhere to certain specific fiduciary standards in their dealings.

20. In failing to accurately describe their reimbursement practices, Defendants violated ERISA's requirement regarding Summary Plan Descriptions.

## DEDUCTIBLE AND OUT-OF-POCKET LIMITS

21. Defendants' obligation to pay health benefits arises once a subscriber has satisfied his or her annual deductible amount. The annual deductible for The Guardian & PHS plan is $250 per individual, $500 per family.

22. On the other end of the deductible is the plan's out-of-pocket limit. The out-of-pocket limit is referred to in The Guardian & PHS plan as the "coinsured charge limit" and will be so referred to here. The coinsured charge limit means that once a subscriber's allowed amounts for services, in total, reaches the coinsured charge limit of $10,000, the subscriber has

no further obligation to pay any share of coinsurance. So, for example, when the total of allowed amounts is below $10,000, Defendants are obligated to pay coinsurance of 80%, and a subscriber is obligated to pay coinsurance of 20%. When a subscriber's allowed amounts for a calendar year total at least $10,000, Defendants must pay 100% coinsurance, and a subscriber's coinsurance obligation disappears.

23. By the contract terms, the allowed amount is the lesser of the provider's actual charge and the UCR. Any amount above UCR does not count toward either the deductible or the coinsured charge limit. If the UCR is inaccurate, then the amounts counted toward the deductible and/or the coinsured charge limit based on such UCR are also inaccurate.

24. Defendants calculated the deductible and the coinsured charge limit using the inappropriate UCR or allowed charge, and failed to credit the difference between the actual charge and the allowed charge to the deductible or to the coinsured charge limit. In addition, Defendants would then pay their coinsurance percentage - - 80% - -of the allowed amount. The Wachtels would thus be compelled to pay their coinsurance percentage - - 20% - - of the allowed amount. In addition, the Wachtels would be liable to the out-of-network provider for the difference between the actual charge and the allowed charge.

25. The calculation of amounts unpaid by UCR determinations, as well as deductible amounts and coinsured charge limits, is arithmetic and clerically correctable for the Wachtels and the Class.

## THE NEW JERSEY REGULATION

26. Defendants are considered "small employer carriers" under New Jersey law and regulation when they administer and/or insure a health plan for an employer with at least 2 but

fewer than 50 employees.

27. Plaintiffs' health plan, known as "The Guardian & PHS Healthcare Solutions" plan is subject to the requirements for small employer health plans, one of which is the New Jersey regulation.

28. The New Jersey regulation, specifically N.J.A.C. § 11:21-7.13(a), requires Defendants to apply the PHCS database using the amounts set forth in the PHCS tables for determining UCR reimbursement for small employer plans.

29. As a uniform pattern and practice, Defendants failed to tell subscribers about the existence of the New Jersey regulation, failed to disclose material information about how they applied the database, and refused to provide the data to subscribers even if requested.

30. By failing to disclose the existence of the New Jersey regulation to subscribers, and by failing to provide material information about the database, including the actual data, to subscribers, Defendants violated their fiduciary duty and disclosure obligations to subscribers.

### PLAINTIFFS' EXPERIENCE WITH UCR

31. Plaintiffs were insured by Guardian beginning in approximately 1997. At some point subsequent to 1997, Guardian advised the Wachtels to switch to The Guardian & PHS plan. The Wachtels thus became insured by The Guardian & PHS plan from approximately 1998 until on or about June 1, 2002. During the period Plaintiffs were insured under The Guardian & PHS plan, Defendants made many determinations to the effect that the "allowed charge" or UCR for the service was less than the out-of-network provider's actual charge.

32. Defendants have made improper UCR determinations for each member of the Wachtel family. In the case of Tory Wachtel, a 15 year old boy with chronic health problems

caused by a malignant brain tumor suffered when Tory was an infant, Defendants have made numerous UCR determinations. Defendants have also made numerous UCR determinations for other members of the Wachtel family.

33. On August 8, 2000, Tory had surgery at Beth Israel Hospital in New York. The surgery was the first stage facial reanimation surgery designed to re-animate his face, which was partially paralyzed as a result of the brain tumor he had suffered. His surgeons, Dr. Rose and Dr. Valauri, were considered out-of-network.

34. Dr. Rose's charge for the operation was $30,075. The reimbursement amount at the 80th percentile for such services was *above* $30,075. Defendants determined that the UCR for Dr. Rose's services was $10,075, and thus disallowed $20,000.

35. Dr. Valauri's charge for the operation was $12,000. The reimbursement amount at the PHCS 80th percentile for such services was *above* $12,000. Defendants determined that the UCR for Dr. Valauri's services was $900, and disallowed $11,100.

36. In violation of N.J.A.C. §11.21-7.13(a) and Plaintiffs' contract of insurance, Defendants failed to pay UCR in accordance with the 80th percentile of the PHCS database.

37. Defendants defended their reimbursement to the Wachtels through two appeals, including a final determination. Defendants defended their reimbursement in an Answer to the Wachtels' complaint, and through many months of litigation.

38. On May 24, 2002, in an effort to moot the Wachtels' claims, Defendants paid the actual charges for Dr. Rose and Dr. Valauri for their services provided to Tory Wachtel on August 8, 2000. They did not pay actual charges for York Anesthesia or for Dr. Prudente, both of whom provided services for Tory on August 8, 2000. Defendants' payment left intact all of

the other improper UCR determinations that they made for Tory Wachtel on occasions other than August 8, 2000, and also left intact improper UCR determinations as to other members of the Wachtel family.

39. Defendants failed to reimburse Plaintiffs pursuant to the terms of The Guardian & PHS plan, or pursuant to the terms of the New Jersey regulation, as to providers other than Dr. Rose and Dr. Valauri on August 8, 2000. Similarly, Defendants failed to reimburse Plaintiffs in conformity either with their plan terms, or with the terms of the New Jersey regulation, as to numerous procedures in the past few years.

40. Plaintiffs exhausted their claims related to the August 8, 2000 surgery for Tory. Defendants had an obligation to but failed to reveal the basis for the claim denials, and failed to apply, disclose, or even refer to the New Jersey regulation. Defendants failed to disclose the PHCS data. Defendants failed to disclose that they were not complying with regulations. Defendants failed to furnish this information depriving subscribers of information required for appeal. It was not until this action was instituted and discovery was compelled that Defendants were forced to disclose the PHCS data proving they did not comply with this regulation.

41. Defendants failed to provide a full and fair appeal process. Defendants do not provide meaningful review or relief during the claims appeal process. Defendants did not disclose the data they relied on, nor the data they were required to rely on, to subscribers.

42. Plaintiffs are entitled to pursue this action for relief. As to Count I, Plaintiffs exhausted their administrative remedies. Moreover, appeals are futile as a matter of law. As to Count II, administrative exhaustion is not required.

### CLASS ACTION ALLEGATIONS

43. Plaintiffs bring this action on their own behalf and on behalf of a class of all persons in the United States who are, or were, at any time during the period within six years of the date this action was filed (the "Class Period"), subscribers or beneficiaries in any small employer health plan who received medical services from an out-of-network provider and for whom Defendants made a determination that the usual, customary or reasonable ("UCR") amount was less than the provider's actual charge, and for whom Defendants did not comply with the New Jersey regulation. In addition, the Class includes all subscribers or beneficiaries in such small employer health plans for whom Defendants failed to disclose required or accurate information, or for whom Defendants failed to provide the specific reasons for a denial of a benefit, or failed to provide the "full and fair review" or for whom Defendants failed to provide an accurate Summary Plan Description.

44. Plaintiffs bring claims for the following: to recover benefits due them under the plan, and to enforce and clarify their rights under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). In Count II, Plaintiffs allege a violation of Defendants' fiduciary obligations. Specifically, Plaintiffs seek to remedy Defendants' failure to convey accurate information in an SPD under ERISA § 102, 29 U.S.C. § 1022 to remedy Defendants' failure to adequately disclose information regarding denial of benefits and to provide a "full and fair review" of the decisions denying claims under ERISA § 503, 29 U.S.C. § 1133 (and regulations promulgated thereunder), and to deal honestly and accurately with subscribers and beneficiaries.

45. Class members are so numerous that joinder of all members is impracticable. Defendants are two of the largest health insurers in the United States, insuring millions of subscribers and beneficiaries nationwide. Upon information and belief, tens of thousands of

Class members reside in New Jersey. Thus, the numerosity requirement of Rule 23 is easily satisfied for the Class.

46. Common questions of law and fact exist as to all Class members and predominate over any questions affecting solely individual members of the Class, including: whether Defendants failed to determine UCR in compliance with the New Jersey regulation for small employer health plans; whether Defendants failed to satisfy their fiduciary obligations to subscribers, including the duty to disclose, the duty to provide specific reasons for claim denials, and the duty to provide a "full and fair review" to subscribers and beneficiaries whose claims were denied in whole or in part on the basis of UCR; and whether Defendants failed to comply with reasonable claims procedures as set forth in federal regulations implementing ERISA.

47. The named Plaintiffs' claims are typical of the claims of the Class members because, as a result of the conduct alleged herein, Defendants have breached their statutory and contractual obligations to Plaintiffs and the Class through and by a uniform pattern or practice as described herein.

48. The named Plaintiffs will fairly and adequately protect the interests of the members of the Class, are committed to the vigorous prosecution of this action, have retained counsel competent and experienced in class litigation and have no interests antagonistic to or in conflict with those of the Class. As such, the named Plaintiffs are adequate class representatives.

49. The prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendants.

50. A class action is superior to other available methods for the fair and efficient

adjudication of this controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them. Given the uniform policy and practices at issue, there will also be no difficulty in the management of this action as a class action.

51. Defendants have failed to comply with the terms of Plaintiffs' group plan by systematically and typically making UCR determinations that did not comply with the New Jersey regulation.

## COUNT I

## BREACH OF CONTRACT AND OTHER RELIEF UNDER ERISA § 501(a)(1)(B)

52. The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

53. Under the provisions of the insurance policies provided to Plaintiffs and the Class, Defendants function as the insurer and as the "group health plan" and/or the "plan administrator" as such terms are interpreted under ERISA. ERISA § 3, 29 U.S.C. § 1002. The insurance policies here at issue are "welfare benefit plans" as such term is interpreted under ERISA. Id.

54. Defendants have breached their obligations under such insurance policies to the Plaintiffs and the Class, in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), by making UCR determinations that failed to comply with the New Jersey regulation.

55. Defendants have further breached their contractual obligations by determining deductible amounts, and coinsured charge limits, based on inaccurate UCR amounts.

56. Defendants have had, and continue to have, an actual conflict of interest in determining UCR amounts, because the cost of such determinations is paid directly by Defendants, such that the profit or "savings" occasioned by UCR reductions are reaped by Defendants. Defendants' actual and direct conflict of interest has harmed the Plaintiffs and the Class.

57. Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiffs and the Class are entitled to compensatory damages. The Class is entitled to declaratory and injunctive relief related to enforcement of the terms of their plans, and to clarify future benefits. Defendants should be compelled to pay the provider's actual charge in every instance in which Defendants were obligated to comply with the New Jersey regulation but failed to do so.

58. Defendants should be compelled to re-calculate deductibles and coinsured charge limits based on the provider's charge (rather than the UCR amount) in every instance in which Defendants were obligated to comply with the New Jersey regulation but failed to do so.

## COUNT II

## DEFENDANTS' BREACH OF THEIR FIDUCIARY DUTIES, INCLUDING THEIR FAILURE TO PROVIDE FULL & FAIR REVIEW & REQUIRED DISCLOSURE

59. The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

60. Defendants function as the "plan" or "plan administrator" within the meaning of such terms under ERISA when they insure a group health plan, or when they are designated as the plan administrator for such plan, including the plans of Plaintiffs and the Class. Defendants are ERISA fiduciaries who have to comply with ERISA requirements such as regarding

13

disclosure and consistently with a duty of loyalty and a duty of care. Plaintiffs and the Class are entitled to receive accurate disclosure from their plan and plan administrator, as well as a "full and fair review" of all denied claims. Plaintiffs are entitled to assert a claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) for a failure to comply with these requirements by the plan and plan administrator.

61. Although Defendants were obligated to do so, they have failed to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 for Plaintiffs and the Class. Defendants have also failed to comply with reasonable claims procedures as set forth in federal regulations implementing ERISA.

62. Defendants also have breached disclosure obligations under ERISA, such as their obligation to furnish accurate materials summarizing such group health plans, known as Summary Plan Description ("SPD") materials under ERISA § 102, 29 U.S.C. § 1022. In addition, Defendants have breached their obligation to supply information requested by subscribers, such as Plaintiffs and the Class, under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). Defendants' failure to supply such information is redressable under ERISA § 502(c), 29 U.S.C. § 1132(c). In addition, Defendants' failure to disclose material information about their UCR determinations violates federal common law, which obligates fiduciaries such as Defendants to provide such information. Defendants have breached their fiduciary duties, including the duty of care owed to subscribers under ERISA § 404, 29 U.S.C. § 1104. Defendants have also violated the duty of loyalty owed to subscribers under ERISA § 406, 29 U.S.C. § 1106.

63. Plaintiffs and the Class have been proximately harmed by Defendants' breach of fiduciary duties, by their failure to comply with ERISA and federal claims procedure regulations,

their failure to provide adequate disclosure, and by their failure to comply with the federal common law. In addition, Plaintiffs of the Class have been harmed by Defendants' failure to comply with ERISA § 503, 29 U.S.C. § 1133 (and implementing regulations), with ERISA § 102, 29 U.S.C. § 1022 and with ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), in an amount to be determined at trial, and are also entitled to injunctive and declaratory relief to remedy Defendants' continuing violation of these provisions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants as follows:

A.    Declaring that Defendants have violated their contractual obligations, and awarding compensatory damages to Plaintiffs and the Class for such violation, and awarding injunctive and declaratory relief to them to ensure enforcement of plan terms and to clarify future entitlement to benefits;

B.    Compelling Defendants to pay the provider's actual charge in every instance in which Defendants were obligated to comply with the New Jersey regulation but failed to do so;

C.    Compelling Defendants to re-calculate deductibles and coinsured charge limits based on the provider's charge (rather than the UCR amount) in every instance in which Defendants were obligated to comply with the New Jersey regulation but failed to do so;

D.    Declaring that Defendants have failed to provide a "full and fair review" to Plaintiffs and the Class under ERISA § 503, 29 U.S.C. § 1133, including but not limited to the failing to comply with federal claims procedure regulations, and awarding compensatory,

injunctive and declaratory relief to ensure compliance with ERISA's requirements;

      E.    Declaring that Defendants have breached their fiduciary obligations to their subscribers under ERISA, including ERISA § 404, 29 U.S.C., § 1104 and ERISA § 406, 29 U.S.C. § 1106, and awarding declatory and injunctive relief to remedy same, including but not limited to removal of a fiduciary;

      F.    Declaring that Defendants have violated their fiduciary obligations under ERISA and the federal common law, including under ERISA § 502(a)(3), § 104(b)(4), 29 U.S.C. § 1024(b)(4) and ERISA § 102, 29 U.S.C. § 1022, for which Plaintiffs and the Class are entitled to injunctive and other equitable relief;

      G.    Preliminarily and permanently enjoining Defendants from failing to comply with the New Jersey regulation for small employer health plans;

      H.    Awarding Plaintiffs and the Class the costs and disbursements of this action, including reasonable counsel fees, costs and reimbursements of expenses including expert fees in amounts to be determined by the Court;

      I.    Awarding prejudgment interest; and

      J.    Granting such other and further relief as is just and proper.

Dated: February 6, 2003

                  Respectfully submitted,

                  **SILLS CUMMIS RADIN TISCHMAN EPSTEIN & GROSS, P.A.**
                  One Riverfront Plaza
                  Newark, New Jersey 07102
                  (973) 643-7000
                  By: _____

          Barry M. Epstein
          A. Ross Pearlson
          Barbara Quackenbos

**POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP**
100 Park Avenue
New York, New York 10017-5516
(212) 661-1100
By:   Stanley M. Grossman
       D. Brian Hufford
       Robert J. Axelrod

**THE CUNEO LAW GROUP, P.C.**
317 Massachusetts Avenue, NE
Suite 300
Washington, D.C. 20002
By:   Jonathan W. Cuneo
       David W. Stanley

**ALPERT & FERRENTINO**
100 S. Ashley Drive, Suite 2000
Tampa, Florida 33602
By:   Jonathan L. Alpert