

SILLS CUMMIS RADIN TISCHMAN
  EPSTEIN & GROSS, P.A.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS LLC
100 Park Avenue
New York, New York 10017
(212) 661-1100

Counsel for Plaintiffs Zev and Linda Wachtel
(Other counsel listed on last page)

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZEV AND LINDA WACHTEL, individually and on behalf of their minor children, TORY, JESSE and BRETT WACHTEL, and on behalf of all others similarly situated, | Index No. 2:01-cv-4183 (FSH)(PS) |
| Plaintiffs, | |
| -against- | **THIRD AMENDED COMPLAINT** |
| | **CLASS ACTION** |
| GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC. and HEALTH NET OF NEW JERSEY, INC., | |
| Defendants. | |

Plaintiffs Zev and Linda Wachtel ("Plaintiffs") allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation made by and through their attorneys, the allegations which appear below.

1.    Plaintiffs, individually and on behalf of their minor children, Tory, Jesse and Brett Wachtel, and on behalf of all others similarly situated, bring this action pursuant to health care plans directly insured by or administered by Defendants Health Net, Inc., Health Net of the Northeast, Inc. and Health Net of New Jersey, Inc. (formerly known as Physician Health Services, Inc., Physicians Health Services of the Northeast, Inc., and Physician Health Services of New Jersey, Inc.) (collectively referred to herein as "Health Net") and Guardian Life Insurance Company of America ("Guardian").

2.    Plaintiffs were subscribers to a Choice health plan which is  underwritten by Guardian Life, and for which Health Net functions as the plan administrator.  It is known as The Guardian & PHS Healthcare Solutions plan ("Healthcare Solutions" plan).  Zev Wachtel's employer, New Jersey Anesthesia, P.A., is considered a "small employer" because there are fewer than 50 employees.  Plaintiff Zev Wachtel is considered a participant in the Healthcare Solutions plan, while Plaintiff Linda Wachtel, and the Wachtel children, are considered beneficiaries of the Healthcare Solutions plan.  Because their plan is provided as an employee benefit by a private employer, their claims are brought under the Employee Retirement Insurance Security Act of 1974 ("ERISA").

3.    Defendants' Healthcare Solutions plans are "Choice" plans, which for an additional premium permit subscribers to obtain health care services from physicians who have not entered into contracts with Defendants to serve as part of its provider network (referred to as "out-of-network" or "non-participating" providers).

4.    Guardian and Health Net have entered into written agreements detailing each Defendant's involvement in the Healthcare Solutions plans.

2

5.    Pursuant to the agreement between Guardian and Health Net, for example, Guardian is financially responsible for 50% of all in-network and out-of-network reimbursements for Healthcare Solutions beneficiaries.

6.    Defendants' plans uniformly provide that subscribers will be reimbursed a fixed percentage (usually 80%) of the "usual, customary and reasonable" (herein referred to as "UCR") fees charged by such out-of-network providers.   Amounts above the UCR, as well as the patient's coinsurance amounts, are not considered toward the subscriber's annual deductible amount, nor are they considered toward the subscriber's out-of-pocket limit.  Once the out-of-pocket limit is reached, Defendants must pay 100% of the actual charge or UCR, whichever is less.

7.    New Jersey regulations govern health care plans, such as those at issue here, when the sponsor of the plan is considered to be a "small employer" under New Jersey law.  For instance, N.J.A.C. § 11:21-7.13 ("New Jersey Regulation") requires the carrier of a small employer plan, in setting UCR fees, to use a database known as the Prevailing Healthcare Charge System ("PHCS"), which is developed by a third party, Ingenix Corp., and sold to insurance companies for making UCR determinations.  The PHCS database purports to reflect the prevailing charges of providers in particular geographic regions, with the charges for specific medical procedures arrayed by percentiles to reflect the portion of the charges above or below the specified level.  The New Jersey Regulation requires the carrier to use the 80th percentile from the most recent release of the PHCS data to set UCR fees.

8.    Through this action, Plaintiffs contend that Defendants have violated the requirements of the New Jersey Regulation by reimbursing subscribers of small employer plans

3

below the required 80th percentile of the PHCS database. In particular, Plaintiffs allege that Defendants have adopted a series of policies and procedures which are designed to reduce reimbursements for out-of-network services and which, in violation of ERISA, are not disclosed to subscribers. Plaintiffs and the Class challenge each and every out-of-network reimbursement that deviates from the amount required by the New Jersey Regulation, regardless of the reason or method relied on to pay less.

9.      In addition to its requirements concerning use of the PHCS database, the New Jersey regulations also mandate certain coverages for small employer plans. Plaintiffs and the Class allege that Defendants have violated these New Jersey Regulations by failing to provide mandated benefits at the level required.

10.      Plaintiffs allege that Health Net and Guardian Life have breached the express terms of their Choice health care plans, and violated their disclosure obligations to their subscribers under ERISA by failing to adhere to the New Jersey Regulation regarding out-of-network reimbursement, and by failing to comply with the New Jersey Regulations regarding mandated benefits and other issues. Through its actions, as detailed herein, Plaintiffs seek restitution or reimbursement for Defendants' unlawful out-of-network determinations and other appropriate equitable and legal relief.

11.      Plaintiffs challenge all of Defendants' out-of-network reimbursement determinations made for every member of the Wachtel family. Plaintiffs seek to represent all similarly situated beneficiaries as further defined herein.

## JURISDICTION, VENUE AND THE PARTIES

12.      Plaintiffs' claims arise under ERISA § 502, 29 U.S.C. § 1132, and therefore under

4

28 U.S.C. § 1331 (federal question jurisdiction).

13.     Venue is appropriately established in this Court under 28 U.S.C. § 1391, and ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), because Defendants conduct a substantial amount of business in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

14.     Plaintiffs reside in Tenafly, New Jersey.

15.     Defendant Guardian Life Insurance Company of America ("Guardian") is incorporated in New York and has its principal place of business in New York, New York.

16.     Defendant Health Net, Inc. is incorporated in Delaware and has its principal place of business in Connecticut. Defendant Health Net of the Northeast, Inc. is incorporated and principally located in Connecticut. Defendant Health Net of New Jersey, Inc., is incorporated in New Jersey and has its principal place of business in New Jersey (collectively "Health Net").

17.     Health Net, Inc., Health Net of the Northeast, Inc. and Health Net of New Jersey, Inc. are each a fiduciary as to the Wachtels and other Healthcare Solutions beneficiaries.

18.     Guardian is also an ERISA fiduciary to the Wachtels and other Healthcare Solutions beneficiaries.

### PLAINTIFFS' GROUP PLAN - VIOLATIONS - REMEDIES SOUGHT

19.     Defendants are obligated to pay a fixed percentage of out-of-network providers' actual charges for medical services provided to subscribers and beneficiaries (usually 80%) of an allowed amount. This is often referred to as a copayment, or coinsurance. Once a subscriber reaches an out-of-pocket limit, then Defendants have agreed to pay 100% of the allowed amount. The allowed amount is the lesser of the provider's actual charge and the usual, customary and

5

reasonable amount.

20.    Plaintiffs' group health plan contains the following definition of UCR:

> Payment for covered services out-of-network is based on usual, customary and reasonable (UCR) charge limitations, except in cases of emergency. UCR is based largely on data compiled and reviewed by outside agencies, which determine customary charges within a certain geographic location. The charges will vary by provider specialty and specific service(s) rendered. UCR allows us to keep your premium at an affordable level and is used by almost all insurers for out-of-network expenses. UCR represents our 'allowed amount' or 'allowed charges' for out-of-network services.

Elsewhere in the group health plan, the following definition of UCR appears:

> With respect to Out-of-Network benefits, an amount that is not more than the usual or customary charge for the service or supply as We Determine, based on a <u>standard</u> approved by <u>the Board</u>.  <u>The Board</u> will decide a <u>standard</u> for what is Reasonable and Customary for the Out-of-Network benefits under the Contract.  The chosen <u>standard</u> is an amount which is most often charged for a given service by a Provider within the same geographic area (emphasis added).

21.    Upon information and belief, "the Board" in the above definition refers to the Small Employer Board.  The "standard" in the above definition refers to an amount equal to or greater than the 80th percentile of the PHCS database using the most updated PHCS profile.

22.    As set forth below, in the instances where Defendants were required to determine out of network reimbursement by complying with the New Jersey Regulation (e.g., equal to or greater than the 80th percentile of PHCS), Defendants failed to do so.

23.    In their actions, Defendants have breached, and continue to breach, their contractual obligations to the Class.  Plaintiffs seek monetary relief, and declaratory and injunctive relief, to remedy these breaches.

24.    Defendants are required under ERISA to make various disclosures to subscribers,

6

including for example accurately setting forth plan terms, explaining the specific reasons why a claim is denied in whole or in part, explaining the basis for its interpretation of plan terms, providing data and documentation, according appeals a "full and fair review", and the like.

25.    The federal common law of trusts, applicable to ERISA fiduciaries, further requires that fiduciaries must deal honestly with subscribers, and adhere to certain specific fiduciary standards in their dealings.

26.    In failing to accurately describe their reimbursement practices, Defendants violated ERISA's requirements regarding Summary Plan Descriptions.

## DEDUCTIBLE AND OUT-OF-POCKET LIMITS

27.    Defendants' obligation to pay health benefits arises once a subscriber has satisfied his or her annual deductible amount.  The annual deductible for The Guardian & Health Net plan is $250 per individual, $500 per family.

28.    On the other end of the deductible is the plan's out-of-pocket limit.  The out-of-pocket limit is referred to in The Guardian & Health Net plan as the "coinsured charge limit" and will be so referred to here.  The coinsured charge limit means that once a subscriber's allowed amount for services, in total, reaches the coinsured charge limit of $10,000, the subscriber has no further obligation to pay any share of coinsurance.   So, for example, when the total of allowed amounts is below $10,000, Defendants are obligated to pay coinsurance of 80%, and a subscriber is obligated to pay coinsurance of 20%.  When a subscriber's allowed amounts for a calendar year total at least $10,000, Defendants must pay 100% coinsurance, and a subscriber's coinsurance obligation disappears.

29.    By the contract terms, the allowed amount is the lesser of the provider's actual

7

charge and the allowed charge. Any amount above the allowed charge does not count toward either the deductible or the coinsured charge limit. If the allowed charge is inaccurate, then the amounts counted toward the deductible and/or the coinsured charge limit based on such allowed charge are also inaccurate.

30.    Defendants calculated the deductible and the coinsured charge limit using a reduced allowed charge determined in violation of the New Jersey Regulation, and failed to credit the difference between the actual charge and the allowed charge to the deductible or to the coinsured charge limit. In addition, Defendants would then pay their coinsurance percentage - - 80% - -of the allowed amount. The Wachtels would thus be compelled to pay their coinsurance percentage - - 20% - - of the allowed amount. In addition, the Wachtels would be liable to the out-of-network provider for the difference between the actual charge and the allowed charge.

31.    The calculation of amounts unpaid by Defendants' out-of-network reimbursement determinations, as well as deductible amounts and coinsured charge limits, is arithmetic and clerically correctable for the Wachtels and the Class.

**NEW JERSEY REGULATIONS**

32.    Defendants are considered "small employer carriers" under New Jersey law and regulation when they administer and/or insure a health plan for an employer with at least 2 but fewer than 50 employees.

33.    Plaintiffs' health plan, known as "The Guardian & Health Net Healthcare Solutions" plan is subject to the requirements for small employer health plans, one of which is the New Jersey Regulation.

34.    The New Jersey Regulation, specifically N.J.A.C. § 11:21-7.13(a), requires

8

Defendants to use the amounts set forth in the most updated PHCS for determining out-of-network reimbursement for small employer plan beneficiaries.

35.    The New Jersey Regulation does not authorize the insurer to use undisclosed policies or procedures to justify further reductions in reimbursements below the 80th percentile of the PHCS database.

36.    Using undisclosed policies or procedures to reduce reimbursement below the 80th percentile of PHCS defeats the purpose of the New Jersey Regulations, which is to create a system of uniformity and consistency in health care reimbursement decisions for small health care plans.

37.    In addition to violating the requirements of the New Jersey Regulation by reimbursing out-of-network services below the 80th percentile of the PHCS database, Defendants also, as a uniform pattern and practice, failed to tell beneficiaries their obligations under the New Jersey Regulation, failed to disclose material information about how they made their determinations, and refused to provide the reasons or data to beneficiaries even if requested.

38.    By failing to disclose their obligations under the New Jersey Regulations regarding, inter alia, mandated benefits, Defendants violated their fiduciary duty and disclosure obligations to beneficiaries.

39.    For example, Defendants denied benefits for certain therapy visits unless they occurred within a 60 day period, even though the New Jersey Regulations specify that the therapy visits (up to 30 a year) can occur anytime during the calendar year; denied benefits for certain preventive services; and placed restrictions on services (e.g., evaluation and management

9

services, mental health and various other services) that are inconsistent with the New Jersey Regulations.

## PLAINTIFFS' EXPERIENCE WITH OUT-OF-NETWORK REIMBURSEMENTS

40.    Plaintiffs were insured by Guardian beginning in approximately 1997. At some point subsequent to 1997, Guardian advised the Wachtels to switch to The Guardian & Health Net plan. The Wachtels thus became insured by The Guardian & Health Net plan from approximately 1998 until on or about June 1, 2002. During the period Plaintiffs were insured under The Guardian & Health Net plan, Defendants made many determinations to the effect that the "allowed charge" was less than the out-of-network provider's actual charge for the service.

41.    Defendants have made numerous out-of-network determinations including UCR determinations for members of the Wachtel family.

42.    Tory Wachtel is a 15 year old boy with severe and chronic health problems caused by a malignant brain tumor suffered when Tory was an infant. On August 8, 2000, Tory had surgery at Beth Israel Hospital in New York. The surgery was the first stage facial reanimation surgery designed to re-animate his face, which was partially paralyzed as a result of the brain tumor he had suffered. His surgeons, Dr. Rose and Dr. Valauri, were out-of-network.

43.    Dr. Rose's charge for the operation was $30,075. The reimbursement amount at the 80th percentile for such services was *above* $30,075. Defendants determined that the out-of-network for Dr. Rose's services was $10,075, and thus disallowed $20,000.

44.    Dr. Valauri's charge for the operation was $12,000. The reimbursement amount at the PHCS 80th percentile for such services was *above* $12,000. Defendants determined that the

out-of-network for Dr. Valauri's services was $900, and disallowed $11,100.

45.    In violation of the New Jersey Regulation and Plaintiffs' Contract of Insurance,
Defendants failed to pay out-of-network reimbursements in accordance with the 80th percentile of
the PHCS database.

46.    Defendants defended their reimbursement to the Wachtels through two appeals,
including a final determination.  Defendants defended their reimbursement in an Answer to the
Wachtels' complaint, and through many months of litigation.

47.    On May 24, 2002, in an effort to moot the Wachtels' claims, Defendants paid the
actual charges for Dr. Rose and Dr. Valauri for their services provided to Tory Wachtel on
August 8, 2000.  They did not pay the actual charges for York Anesthesia or for Dr. Prudente,
both of whom provided services for Tory on August 8, 2000.  In fact, Defendants left over
$1,000 unpaid to York Anesthesia for Tory's August 8, 2000 surgery and left another $400
unpaid to York Anesthesia for Tory's April 19, 2001 surgery.  Numerous other out-of-network
reimbursement determinations by Defendants made as to Tory's April 19, 2001 facial
reanimation surgery and as to other dates were not in compliance with the New Jersey
Regulation.

48.    Defendants' payment left intact all of the other improper UCR determinations that
they made for Tory Wachtel on occasions other than to Dr. Rose and Dr. Valauri on August 8,
2000, and also left intact improper out-of-network reimbursement determinations as to other
members of the Wachtel family.

49.    Defendants failed to reimburse Plaintiffs pursuant to the terms of the Healthcare
Solutions plan, or pursuant to the terms of the New Jersey Regulation, as to providers other than

11

Dr. Rose and Dr. Valauri on August 8, 2000. Similarly, Defendants failed to reimburse Plaintiffs in conformity either with their plan terms, or with the terms of the New Jersey Regulation, as to numerous procedures in the past few years.

50.    Guardian processed certain out-of-network claims related to the Wachtels which were not paid in full.

51.    Plaintiffs exhausted their claims related to the August 8, 2000 surgery for Tory. Defendants had an obligation to but failed to reveal the basis for the claim denials, and failed to apply, disclose, or even refer to the New Jersey Regulation. Defendants failed to disclose the PHCS data. Defendants failed to disclose that they were not complying with the New Jersey Regulation. Defendants failed to furnish this information depriving subscribers of information required for appeal. It was not until this action was instituted and discovery was compelled that Defendants were forced to disclose the PHCS data proving they did not comply with this regulation.

52.    Defendants failed to provide a full and fair appeal process. Defendants did not provide meaningful review or relief during the claims appeal process. Defendants did not disclose the reasons for their out-of-network reimbursement determinations.

53.    Among the reasons for Defendants' deviation from the amount required by the New Jersey Regulation, thus far revealed in discovery and by means of undisclosed policies and procedures, include: obtaining discounted amounts through a third party; applying multiple surgery rules and policies related to co-surgeon and assistant surgeons; treating out-of-network providers as in-network; using a software program known as code review; paying some claims at a very reduced percentage of charges; applying a database other than PHCS to determine

12

reimbursement; using the provider's billing address rather than where the service was performed to determine out-of-network reimbursement; using negotiated fees or fee schedules; applying shortened deadlines; applying alleged "industry standards"; using outdated PHCS data ("Outdated Data") and applying other internal undisclosed policies and procedures.

54.    Defendants failed to provide full restitution to the Wachtels and other beneficiaries under the Consent Order Health Net entered into with the New Jersey.

55.    New Jersey Regulations mandate benefits for various services for New Jersey small employer health plan beneficiaries (e.g., preventive services, certain types of therapy, surgery, urgent or emergency care), and further strictly limit the circumstances in which services for New Jersey small employer beneficiaries may be denied using pre-authorization requirements or pre-existing conditions.

56.    Defendants have violated New Jersey Regulations as to mandated benefits and are liable for all such violations.

57.    Defendants have been violating the New Jersey Regulation and New Jersey Regulations since the effective date for such Regulations on or about August 1, 1996.

58.    Any statute of limitations that would otherwise apply should be tolled due to Defendants' conduct.

59.    Plaintiffs are entitled to pursue this action for relief. As to Count I, Plaintiffs exhausted their administrative remedies. Moreover, appeals are also futile as a matter of law. Under the federal claims procedure regulations, the claims are deemed exhausted as a result of Defendants' unreasonable claims procedures. As to Count II, administrative exhaustion is not required.

13

## CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action on their own behalf and on behalf of a class of all persons in the United States who are, or were, at any time during the period within six years of the date this action was filed (the "Class Period"), subscribers or beneficiaries in any small employer health plan who received medical services from an out-of-network provider and for whom Defendants made a determination that did not comply with the New Jersey Regulation or otherwise failed to comply with the New Jersey Regulations by, for example, failing to pay fully for mandated benefits. In addition, the Class includes all subscribers or beneficiaries in such small employer health plans for whom Defendants failed to disclose required or accurate information, or for whom Defendants failed to provide the specific reasons for a denial of a benefit, or failed to comply with the beneficiary's Summary Plan Description and/or Contract of Insurance.

61.     Plaintiffs bring claims for the following: to recover benefits due them under the plan, and to enforce and clarify their rights under ERISA and the federal common law including under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). In Count II, Plaintiffs allege a violation of Defendants' fiduciary obligations. Specifically, Plaintiffs seek to remedy Defendants' failure to convey accurate information in an SPD under ERISA § 102, 29 U.S.C. § 1022 to remedy Defendants' failure to adequately disclose information regarding denial of benefits and to provide a "full and fair review" of the decisions denying claims under ERISA § 503, 29 U.S.C. § 1133 (and regulations promulgated thereunder), and to deal honestly and accurately with beneficiaries.

62.     Class members are so numerous that joinder of all members is impracticable. Defendants are two of the largest health insurers in the United States, insuring millions of

14

subscribers and beneficiaries nationwide. Upon information and belief, tens of thousands of

Class members reside in New Jersey. Thus, the numerosity requirement of Rule 23 is easily

satisfied for the Class.

63.    Common questions of law and fact exist as to all Class members and predominate

over any questions affecting solely individual members of the Class, including: whether

Defendants' conduct alleged herein constitutes a breach of fiduciary duty; whether Defendants

failed to determine out-of-network reimbursement in compliance with the New Jersey Regulation

for small employer health plans; whether Defendants failed to satisfy their disclosure obligations

to subscribers, including the duty to provide specific reasons for claim denials, whether

Defendants failed to provide a "full and fair review" to beneficiaries whose out-of-network

claims were denied in whole or in parts and whether Defendants failed to comply with reasonable

claims procedures as set forth in federal claims procedure regulations implementing ERISA.

64.    The named Plaintiffs' claims are typical of the claims of the Class members

because, as a result of the conduct alleged herein, Defendants have breached their statutory and

contractual obligations to Plaintiffs and the Class through and by a uniform pattern or practice as

described herein.

65.    The named Plaintiffs will fairly and adequately protect the interests of the

members of the Class, are committed to the vigorous prosecution of this action, have retained

counsel competent and experienced in class litigation and have no interests antagonistic to or in

conflict with those of the Class. As such, the named Plaintiffs are adequate class representatives.

66.    The prosecution of separate actions by individual members of the proposed Class

would create a risk of inconsistent or varying adjudications which could establish incompatible

15

standards of conduct for Defendants.

67.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them.  Given the uniform policy and practices at issue, there will also be no difficulty in the management of this action as a class action.

68.    Defendants have failed to comply with the terms of Plaintiffs' group plan by systematically and typically making UCR determinations that did not comply with the New Jersey regulation.

**COUNT I**

**<u>BREACH OF CONTRACT AND OTHER RELIEF UNDER ERISA § 502(a)(1)(B)</u>**

69.    The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

70.    Under the provisions of the insurance policies provided to Plaintiffs and the Class, Defendants function as the insurer and as the "group health plan" and/or the "plan administrator" as such terms are interpreted under ERISA. ERISA § 3, 29 U.S.C. § 1002. The insurance policies here at issue are "welfare benefit plans" as such term is interpreted under ERISA. <u>Id</u>.

71.    Defendants have breached their obligations under such insurance policies to the Plaintiffs and the Class, in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), by making out-of-network reimbursement determinations that failed to comply with the New Jersey

16

Regulation, and by otherwise violating New Jersey Regulations applicable to small employer plan beneficiaries.

72.      Defendants have further breached their contractual obligations by determining deductible amounts, and coinsured charge limits, based on inaccurate out-of-network reimbursement amounts.

73.      Defendants have had, and continue to have, an actual conflict of interest in determining UCR amounts, because the cost of such determinations is paid directly by Defendants, such that the profit or "savings" occasioned by out-of-network reimbursement determinations are reaped by Defendants. Defendants' actual and direct conflict of interest has harmed the Plaintiffs and the Class.

74.      Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiffs and the Class are entitled to compensatory damages. The Class is entitled to declaratory and injunctive relief related to enforcement of the terms of their plans, and to clarify future benefits. Defendants should be compelled to pay the provider's actual charge in every instance in which Defendants were obligated to comply with the New Jersey Regulation or New Jersey Regulations generally and failed to do so.

75.      Defendants should be compelled to re-calculate deductibles and coinsured charge limits based on the provider's charge (rather than the out-of-network amount) in every instance in which Defendants were obligated to comply with the New Jersey Regulation or New Jersey Regulations generally but failed to do so.

## COUNT II

## DEFENDANTS' BREACH OF THEIR FIDUCIARY DUTIES, INCLUDING THEIR FAILURE TO PROVIDE FULL & FAIR REVIEW & REQUIRED DISCLOSURE

76.    The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

77.    Defendants function as the "plan" or "plan administrator" within the meaning of such terms under ERISA when they insure a group health plan, or when they are designated as the plan administrator for such plan, including the plans of Plaintiffs and the Class. Defendants are ERISA fiduciaries who have to act with a duty of loyalty and a duty of care. Plaintiffs and the Class have been harmed by Defendants' breach of fiduciary duty. As described herein, Defendants' conduct breached their fiduciary obligations to Plaintiffs and the Class.

78.    Although Defendants were obligated to do so, they have failed to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 for Plaintiffs and the Class which can be asserted under ERISA §502(a)(3), 29 U.S.C. § 1132(a)(3). Defendants have also failed to comply with reasonable claims procedures as set forth in federal regulations implementing ERISA.

79.    Defendants also have breached disclosure obligations under ERISA, such as their obligation to furnish accurate materials summarizing such group health plans, known as Summary Plan Description ("SPD") materials  under ERISA § 102, 29 U.S.C. § 1022. In addition, Defendants have breached their obligation to supply information to subscribers, such as Plaintiffs and the Class, under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). Defendants' failure to supply such information is redressable under ERISA § 502(c), 29 U.S.C. § 1132(c). In

18

addition, Defendants' failure to disclose material information about their out-of-network

reimbursement UCR determinations violates federal common law, which obligates fiduciaries

such as Defendants to provide such information.  Defendants have breached their fiduciary

duties, including the duty of care owed to subscribers under ERISA § 404, 29 U.S.C. § 1104.

Defendants have also violated the duty of loyalty owed to subscribers under ERISA § 406, 29

U.S.C. § 1106.

      80.    Plaintiffs and the Class have been proximately harmed by Defendants' breach of

fiduciary duties, by their failure to comply with ERISA and federal claims procedure regulations,

their failure to provide adequate disclosure, and by their failure to comply with the federal

common law.  In addition, Plaintiffs of the Class have been harmed by Defendants' failure to

comply with ERISA § 503, 29 U.S.C. § 1133 (and implementing regulations), with ERISA §

102, 29 U.S.C. § 1022 and with ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), in an amount to be

determined at trial, and are also entitled to injunctive and declaratory relief to remedy

Defendants' continuing violation of these provisions.

## **PRAYER FOR RELIEF**

      **WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants as

follows:

      A.    Declaring that Defendants have violated the New Jersey Regulation

regarding out-of-network reimbursement, and the New Jersey Regulations regarding, inter alia,

mandated benefits;

      B.    Declaring that Defendants have breached their fiduciary obligations to

their subscribers under ERISA, including ERISA § 404, 29 U.S.C., § 1104 and ERISA § 406, 29

U.S.C. § 1106, and awarding declatory and injunctive relief to remedy same, including but not limited to their removal as fiduciaries;

      C.      Preliminarily and permanently enjoining Defendants from failing to comply with the New Jersey Regulation and New Jersey Regulations generally for small employer health plans;

      D.      Declaring that Defendants have violated their contractual obligations, and awarding compensatory damages to Plaintiffs and the Class for such violation, and awarding injunctive and declaratory relief to them to ensure enforcement of plan terms and to clarify future entitlement to benefits;

      E.      Compelling Defendants to pay the provider's actual charge in every instance in which Defendants were obligated to comply with the New Jersey Regulation or New Jersey Regulations but failed to do so;

      F.      Compelling Defendants to re-calculate deductibles and coinsured charge limits based on the provider's charge (rather than the UCR amount) in every instance in which Defendants were obligated to comply with the New Jersey Regulation or New Jersey Regulations but failed to do so;

      G.      Declaring that Defendants have failed to provide a "full and fair review" to Plaintiffs and the Class under ERISA § 503, 29 U.S.C. § 1133, including but not limited to the failing to comply with federal claims procedure regulations, and awarding compensatory, injunctive and declaratory relief to ensure compliance with ERISA's requirements;

      H.      Declaring that Defendants have violated their fiduciary disclosure obligations under ERISA and the federal common law, including under ERISA § 502(a)(3), §

20

104(b)(4), 29 U.S.C. § 1024(b)(4) and ERISA § 102, 29 U.S.C. § 1022, for which Plaintiffs and

the Class are entitled to injunctive and other equitable relief;

      I..     Awarding Plaintiffs and the Class the costs and disbursements of this

action, including reasonable counsel fees, costs and reimbursements of expenses including expert

fees in amounts to be determined by the Court;

      J.     Awarding prejudgment interest; and

      K.     Granting such other and further relief as is just and proper.

Dated: October 17, 2003

          Respectfully submitted,

          **SILLS CUMMIS RADIN TISCHMAN**
          **EPSTEIN & GROSS, P.A.**
          One Riverfront Plaza
          Newark, New Jersey 07102
          (973) 643-7000

          By: _____
             Barry M. Epstein (BE-6027)

          **POMERANTZ HAUDEK BLOCK**
          **GROSSMAN & GROSS LLP**
          100 Park Avenue
          New York, New York 10017-5516
          (212) 661-1100

          By: _____
             D. Brian Hufford (DH-7181)

**CUNEO, WALDMAN & GILBERT**
317 Massachusetts Avenue, NE
Suite 300
Washington, D.C. 20002
By:     Jonathan W. Cuneo
        David W. Stanley


**THE ALPERT LAW FIRM**
401 E. Jackson Street, Suite 1825
Tampa, Florida 33602

By:     Jonathan L. Alpert