**NOT FOR PUBLICATION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                                )
ZEV AND LINDA WACHTEL, *et al.*,        )        Civ. Docket No.  01-4183
                                                )        Hon. Faith S. Hochberg, U.S.D.J.
              Plaintiffs                        )
                                                )
         v.                                     )
                                                )
GUARDIAN LIFE INS. CO., *et al.*,       )
                                                )
              Defendants.                       )
_____)

_____
                                                )
RENEE MCCOY, individually and on        )
behalf  of all others similarly situated,       )        Civ. Docket No.  03-1801
                                                )        Hon. Faith S. Hochberg, U.S.D.J.
                                                )
              Plaintiffs                        )        **OPINION & ORDER**
                                                )
         v.                                     )
                                                )        May 5, 2006
HEALTH NET, INC., HEALTH NET           )
OF THE NORTHEAST, INC., and            )
HEALTH NET OF NEW JERSEY, INC.         )
                                                )
              Defendants.                       )
_____)

I.      **Introduction:**

        This matter comes before the Court upon Plaintiffs' Motion to Compel production of

documents claimed by Defendants to be protected by the attorney-client privilege.  The Motion

contends that the documents sought fall within the crime-fraud exception to the attorney-client

privilege and work product doctrine.

        On November 22, 2005, this Court issued an Order setting forth a procedure for review of

the contested documents.  The Court held oral argument on February 28, 2006.

This opinion and order will also address the production of e-mails ordered by this Court at the hearing held on February 28, 2006; Defendants' Appeal of Judge Shwartz's March 9, 2006 Order; Defendants' Motion on Short Notice for a Stay of Judge Shwartz's March 9, 2006 Order; Plaintiffs' appeal of Judge Shwartz's Order, entered on July 28, 2005, denying Plaintiffs' request for leave to file a supplemental expert report of Bernard Siskin, Ph.D.; Defendants' appeal of Judge Shwartz's August 31, 2005 Order excluding certain defense witnesses for failure to disclose sufficiently the identity of those individuals pursuant to Fed. R. Civ. P. 26(a)(1)(A); Defendants' appeal of Judge Shwartz's October 17, 2005 Order granting sanctions against defendants for spoliation; and Defendants' appeal of Judge Shwartz's December 28, 2005 Order.

## II.   Crime-Fraud Exception

### A.   Legal Standard

The attorney-client privilege protects communications between an attorney and his/her client made in confidence for the purpose of obtaining legal advice.  Because the privilege has its costs, it is not absolute.  See United States v. Zolin, 491 U.S. 554, 562 (1989) ("Since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose.") (citations omitted); see also United States v. Doe, 429 F.3d 450, 453 (3d Cir. 2005) ("Because this ancient and valuable privilege is at the expense of the full discovery of the truth, it should be strictly construed.").

The crime-fraud exception allows for disclosure of otherwise privileged communications when they are made with the intent to further a continuing or future crime or a fraud.  See Doe, 429

F.3d at 454.[1]  The purpose of the crime-fraud exception is "to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." Zolin, 491 U.S. at 562 (citations omitted).

The Third Circuit has established a multi-step process for determining whether a party's claim of privilege should be pierced by the crime-fraud exception.  First, in order to invoke the exception, the party seeking discovery must make a prima facie showing that (1) the client claiming the privilege was engaging or intended to engage in a crime or fraud at the time of the attorney-client communication, and (2) that the communication was in furtherance of the continuing or intended crime or fraud.  See In re Grand Jury Subpoena, 223 F.3d 213 (3d Cir. 2000); see also In Re: Grand Jury Investigation, No. 06-1474 (3d Cir. Apr. 21, 2006) (explaining that a client's misuse of communications with her attorney in furtherance of an improper purpose is sufficient to satisfy the second prong of the crime-fraud exception).  The prima facie showing requires that the party seeking discovery  "present evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." Haines v. Liggett Group, Inc., 975 F.2d 81, 95-96 (3d Cir. 1992); see also Zolin, 491 U.S. at 572 ("Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.") (citations and quotations omitted).

---

[1] The crime-fraud exception also applies to attorney work product, which "loses its protected status if it relates to efforts to facilitate a crime or fraud, or to conceal illegal conduct, obstruct justice, or subvert the legal system." See Gutter v. E.I. Dupont De Nemours, 124 F. Supp. 2d 1291, 1294 n. 2 (S.D. Fla. 2000); see also In re Grand Jury Proceedings (FMC Corp.), 604 F.2d 798, 802-03 (3d Cir. 1979).

This evidentiary showing, which is required before the Court may conduct an *in camera* review of the contested documents, is a lesser standard than that which is ultimately required for disclosure under the crime-fraud exception.  Zolin, 491 U.S. at 572 (holding that a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege); In Re: Grand Jury Investigation, No. 06-1474 at 13 (describing as not particularly heavy the burden to make the necessary prima facie showing for the crime-fraud exception); Haines, 975 F.2d at 96 (noting that "the decision to engage in *in camera* review implicates a much more lenient standard of proof than the determination to apply the crime/fraud exception, as the intrusion on the asserted privilege is minimal") (citations omitted).  Where this Court uses the term "prima facie showing" in this opinion, it is referring to the standard set forth by the Third Circuit, which requires a factual basis "to support a good faith belief by a reasonable person that the materials may reveal evidence of a crime or fraud."  See Haines, 975 F.2d at 96.

If the court determines that the party seeking discovery has presented sufficient evidence at stage one, it may decide to conduct an *in camera* evaluation of the contested documents.  Zolin, 491 U.S. at 572 ("[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court.").  The Court then must determine if the party asserting the privilege has sustained its burden of proof, specifically if it has given a reasonable explanation of its conduct.  See Gutter, 124 F. Supp. 2d. at 1307; see also Feldberg v. Walters, 862 F.2d 622, 626 (7th Cir. 1988) (explaining that the prima facie case requires the adverse party, "the one with superior access to the evidence and in the best position to explain things, to come forward with that explanation").  The Third Circuit requires that "the party defending the privilege be given the opportunity to be heard, by evidence and argument" as to why the privilege should not be pierced.  See Haines, 975 F.2d at 97; see also Laser

Ind. Ltd. v. Reliant Tech., Inc., 167 F.R.D. 417, 430 (N.D. Cal. 1996) (finding that a court must "permit the holder of the privilege to submit evidence and argument that tends to rebut an inference of any of the necessary elements of the crime/fraud exception").

Finally, the court must decide if the evidence, including the communications themselves and the arguments presented, shows that it is more likely than not that the holder of the privilege sought or used legal advice to commit or try to commit a crime or fraud.  See Medical Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc., 30 F. Supp. 2d 1182, 1206 (D. Ariz. 1998) (holding that in order to pierce the attorney-client privilege based on the crime-fraud exception, "the district court must determine, by a preponderance of the evidence, whether the exception is justified, taking into account 'the entire record'"); Laser Ind., 167 F.R.D. at 441 (applying the "more likely than not" standard in deciding whether to pierce the privilege under the crime-fraud exception).  Thus, if the court accepts the explanation provided by the party asserting the privilege as sufficient to rebut the prima facie case made at stage one, the privilege will be upheld.  Gutter, 124 F. Supp. 2d. at 1307 (explaining the procedures outlined in Haines); see also Feldberg, 862 F.2d at 626.  On the other hand, if the Court finds insufficient evidence to rebut the prima facie case, then the attorney-client privilege is pierced.

    B.    Analysis

The plaintiffs have presented evidence sufficient to support a finding, at this preliminary stage, that the elements of the crime-fraud exception may be met.  The crime-fraud exception is not limited to evidence that supports a finding of common-law fraud.  Rather, under federal law, the exception can encompass communications and attorney work product "in furtherance of an intentional tort that undermines the adversary system itself."  See Madanes v. Madanes, 199 F.R.D.

135, 149 (S.D.N.Y. 2001); see also In re Sealed Case, 676 F.2d 793, 812 (D.C. Cir. 1982).  This may include communications and work product used in furtherance of the spoliation of evidence. Rambus, Inc. v. Infineon Tech. AG, 220 F.R.D. 264, 283 (E.D. Va. 2004).  The evidence presented here sets forth a prima facie showing sufficient to warrant in camera review of Defendants' allegedly privileged documents in the subject matter areas set forth below.

By way of example, the court finds sufficient evidence in the record to suggest that the Health Net Defendants[2] made misleading representations, by omission, to agents of the New Jersey Department of Banking and Insurance ("NJDOBI") about the extent of the company's use of improper data to calculate its beneficiaries' out-of-network benefits.  In late 2002 and early 2003, Health Net negotiated with NJDOBI to reimburse beneficiaries for its use of outdated HIAA data[3] to calculate the usual customary rate ("UCR") for out-of-network medical procedures.  Throughout this period of negotiations, leading up to a signed Consent Order in December 2002, corporate officials within Health Net, including the Chief Financial Officer of Health Net of the Northeast ("HNNE"), knew that the company's use of outdated data began two years before July 2001.  Yet top Health Net officials did not disclose this to NJDOBI and conducted the negotiations through representations solely about the use of outdated data beginning in July 2001, which led to a Consent Order limited to the post-July 2001 time period.

Health Net representatives, including plan counsel Eileen O'Donnell, Esq., and her boss,

---

[2] The Defendants are Health Net, Inc., Health Net of the Northeast, Inc., and Health Net of New Jersey, Inc.  In this opinion, they will be referred to collectively as "Health Net," the "Health Net Defendants" or as the "Defendants."

[3] When the Court refers to the "HIAA issue" in this Opinion, it refers to the use of outdated HIAA data to calculate Health Net beneficiaries' out-of-network benefits.  See Class Certification Opinion at 10-12 (Aug. 5, 2004).

HNNE General Counsel Paul Dominianni, Esq., did not disclose the company's practice of using outdated data as early as 1999, thereby avoiding the obligation to reimburse Health Net beneficiaries hundreds of thousands of dollars.   While Ms. O'Donnell testified that she personally did not know that the practice began in 1999, other more senior corporate officials, including the Chief Financial Officer of the Northeast Division, had knowledge that: (1) the use of outdated data in reimbursements to beneficiaries began at least as early 1999; and (2) that Health Net did not so represent to the state agency, instead limiting Health Net's disclosure to the period after July 1, 2001. This omission of facts rendered the stated facts misleading.  Plaintiffs have set forth enough to make out a prima facie showing that Health Net may thus have been utilizing the services of its counsel to engage in a crime or fraud at the time of the communications with NJDOBI.

The court also finds sufficient evidence to support a prima facie showing that the Health Net Defendants may have obstructed justice in connection with its dealings with NJDOBI.  Evidence adduced constitutes a prima facie showing that, when hearings began in federal court as to whether certain preliminary relief should issue, Health Net, through its counsel, may have misrepresented in Court papers the existence and progress of a purported agreement between Health Net and NJDOBI to reimburse beneficiaries' overpayments resulting from Health Net's use of outdated data between January 1, 1999 and June 30, 2001.

This claimed agreement between Health Net and NJDOBI to make restitution for the earlier period, from January 1, 1999 to June 30, 2001, has been colloquially referred to as the "Second Restitution," even though it refers to an earlier time period than the "First Restitution."  It was claimed by Health Net, through counsel at the preliminary injunction hearing on November 20, 2003, that Paul Dominianni, Esq., Chief Plan Counsel for HNNE, and Lee Barry, Assistant Commissioner

7

of NJDOBI reached an agreement to make a "Second Restitution."  Individuals within Health Net, including Mr. Dominianni, knew well prior to November 2003 that a Second Restitution to beneficiaries and disclosure to NJDOBI were imperative, but it was not until the very date of this Court's preliminary injunction hearing on November 20, 2003, that Mr. Dominianni finally spoke with Mr. Barry.  The phones connected for about seven minutes.  What was said during that short call is disputed.   Both sides agree that the call involved pleasantries about Mr. Barry's planned day off and a meeting to which he was running.  Mr. Dominianni testified that he told Mr. Barry that Health Net had "a problem" from January 1, 1999 to July 2001; that the company intended to resolve it; that Mr. Barry concurred; and that an agreement to make the "Second Restitution" was formed.  Mr. Barry contends that nothing substantive was discussed about any further restitution and that no agreement of any kind was made in the short phone call.  No confirming e-mail, letter, or draft agreement was ever sent by Mr. Dominianni to Mr. Barry.  Mr. Dominianni testified that, "at the time [he] thought there was some chance that Mr. Barry may follow up and some chance that he may not."  10/17/05 Transcript at 155, ln. 2-3.  Mr. Dominianni never followed up with Mr. Barry to memorialize any agreement.  Id. at 155, ln. 7-9.

        The short conversation between Mr Dominianni and Mr. Barry took place about an hour or two before this Court convened its first evidentiary hearing, where the Court would consider whether injunctive relief was necessary to protect Health Net beneficiaries.  At the hearing on November 20, 2003, Health Net's counsel, John Pendleton, Jr., Esq., of McCarter & English, assured the Court that no injunctive relief was necessary because "Health Net has since gone back to the New Jersey department, and there may be either an amendment to the consent order, or a separate – there is no investigation.  We made disclosure that there are – we've discovered that in 1999 we hadn't paid,

8

and so we're going to rectify that, that's about a $528,000 restitution program that we'll make to small group people in New Jersey." 11/20/03 Transcript at 30, ln. 4-10. Health Net plan counsel, Eileen O'Donnell, Esq., testified on that date that "we have gone back to the department [NJDOBI] to say that we have uncovered other errors and that we would propose, and they accepted our plan of remediation." Id. at 149, ln. 13-16.

During the year following the November 20, 2003 hearing, Mr. Pendleton repeated several times in briefs and letters that the Second Restitution was "in the process" of being carried out. However, there is no evidence, during the entire year after the November 20, 2003 hearing, that any "process" for carrying out the Second Restitution had ever begun.

On December 17, 2004, Magistrate Judge Shwartz issued an order demanding an explanation. Mr. Dominianni thereupon began a frantic effort to make it appear that the Second Restitution had been underway. As part of these efforts, Mr. Dominianni (through McCarter & English, Esqs.) submitted an affidavit on January 4, 2005, blaming the failure to accomplish the Second Restitution on the many steps needed to complete the task and on "inadequate continuity of work flow and personnel." The affidavit failed to mention that no work had been done to commence the restitution until the Magistrate Judge demanded an explanation and that by the date of the affidavit, Paul Dominianni, Esq., knew that the "work," i.e. the calculations for the Second Restitution, had already been done 2 years earlier.

This Court finds sufficient evidence to establish a prima facie showing that Mr. Dominianni and Health Net never intended to make a genuine agreement with NJDOBI to make a Second Restitution nor to carry it out, had the Magistrate Judge not blown the whistle. Disclosure that Health Net had begun to use outdated data two years earlier than the time period disclosed during

the negotiations leading to the "First Restitution" would have notified NJDOBI that its initial Consent Order with Health Net, in December 2002, was based on misleading statements. Such a realization would likely have caused officials at NJDOBI to open a more searching investigation into Health Net's beneficiary reimbursement practices and, in particular, into its use of outdated data. The claimed agreement for a "Second Restitution," if fully disclosed to NJDOBI, could cause administrative repercussions because it would have revealed the misleading statements made in connection with the "First Restitution." Thus, the evidence presented is adequate to support a prima facie showing that *in camera* review of privileged documents in this case could reveal that Health Net used its counsel to obstruct justice in connection with NJDOBI.

The Court also finds sufficient evidence that the Health Net Defendants may have used their counsel to delay discovery. Throughout discovery, Plaintiffs expressed concerns to Magistrate Judge Shwartz that the Health Net Defendants were not taking all appropriate steps to preserve and produce relevant documents. In response to these concerns, Health Net's counsel, John Pendleton, Jr., stated in a May 8, 2003 letter to Magistrate Judge Shwartz that "we are familiar with our obligations" and that the company "has complied with its obligations to preserve evidence." Despite these assurances, there has been a prima facie showing that Health Net did not have effective procedures in place to ensure the preservation of employees' electronic mail. An associate at McCarter and English stated that she was not made aware by the client (Health Net) of its electronic document procedures.

Judge Shwartz issued many discovery orders that should have unearthed hundreds or perhaps thousands of e-mails from Defendants' files during the discovery period. However, it was not until late 2005, when this Court commenced a Rule 37 / Integrity hearing into alleged discovery abuses and misrepresentations to the Court, that most of those e-mails first began to emerge, years after they

should have been produced in discovery. For the duration of years of discovery, and even throughout the Integrity Hearing itself, Health Net counsel did not disclose what this Court and Magistrate Judge Shwartz learned for the first time <u>after</u> the Integrity Hearing — that Health Net e-mails were sent to backup disks after 90 days from the date of creation; that these disks were never searched for responsive documents during the three year period of discovery; and that when any employees deleted e-mails within 30 days, such e-mails would be lost permanently upon transfer to storage at 90 days. Moreover, even when a central witness in the case (Eileen O'Donnell, Esq.) retained e-mails by overriding this system, Health Net counsel gave conflicting accounts of whether she was asked to do a search of those e-mails for relevant documents. Ms. O'Donnell testified that she was never asked to do and she never did a comprehensive e-mail search. 03/09/06 Transcript at 157, ln. 12-13. Outside counsel testified that Ms. O'Donnell claimed she turned over all the e-mails that existed on the "HIAA issue," which consisted of a few e-mails between Ms. O'Donnell and Lee Barry. 01/05/06 Transcript at 232, ln. 5-10, 18-25; 03/01/06 Transcript at 19, ln. 8-14. Inside counsel testified Ms. O'Donnell was aware of the document requests in this case and aware of the need to look through her e-mail files to produce all responsive e-mails, so to the extent that she elected not to search her own e-mails, inside counsel did not get those e-mails from Ms. O'Donnell. 01/05/06 Transcript at 72, ln. 1-13. Three counsel; three statements; no serious e-mail search.

Despite repeated queries by this Court as to why so many highly relevant e-mails had never been timely produced, not one member of Health Net's legal team informed the court about the non-preservation risk and non-search of e-mails older than 90 days until after the conclusion of the Rule 37/Integrity hearing. By this time, it was too late to query Health Net witnesses about their searches for documents. Health Net's newest outside counsel, Morgan Lewis and Bockius, submitted a

11

lengthy certification on December 12, 2005, in response to the Court's questions about whether, when and how certain specified Health Net employees made a reasonable, thorough and diligent search of their files for responsive documents.  The December 12, 2005 certification did not state that HNNE employees' e-mails went to a backup tape after 90 days, and thus could not be searched by the employees themselves, nor that the backup tapes were not searched by Health Net.  Counsel at Morgan, Lewis and Bockius LLP stated that he also did not know of this Health Net electronic document policy, see 03/09/06 Transcript at 22, ln. 13-17, but Health Net's other outside counsel at Epstein Becker & Green P.C., Herve Gouraige, Esq., did know about the extent of email searches or lack thereof, see Certification of Barry M. Kazan.

In sum, Health Net disclosed to one of three outside firms (Epstein Becker and Green, P.C.) its e-mail policies; no counsel informed either Magistrate Judge Shwartz or this Court until after the conclusion of the Rule 37/Integrity hearing; and Health Net only searched four of its scores of pertinent employees' backup tapes, for limited periods of time, in order to locate responsive e-mails. The most relevant e-mails in the case were produced from a one-month search of backup tapes belonging to a single employee, which were searched only after the Court at the Integrity Hearing demanded to know the origin of a specific document.

These facts are sufficient to support a prima facie showing that *in camera* review of the materials may reveal evidence to establish that the crime-fraud exception applies to certain allegedly privileged documents.

**III.     Compliance with Certain Outstanding Discovery Orders**

   A.     July 23, 2003 Order Regarding HIAA issue

On February 28, 2006, the Court, *inter alia*, inquired into compliance with an Order issued

by Judge Shwartz on July 23, 2003, which ordered Health Net to produce, by August 5, 2003, "any and all emails containing information related to the HIAA issue and Consent Order, including redacted emails, which redact information unrelated to the HIAA issue." 02/28/06 Transcript at 125, ln. 16-18.   When counsel for Health Net stated that all e-mails had not been searched, this Court ordered the Defendants to "[p]roduce all electronic information related to the HIAA issue of the use of outdated data that in any way affects the issues in McCoy and Wachtel that are being litigated." Id. at 126, ln. 19-22.  This Court further ordered that the Health Net Defendants produce any e-mail communications, by specific individuals on a list provided by the court, which refer or relate to the use of outdated HIAA data in any year.  Id. at 130, ln. 5-7.  The Court set March 14, 2006 as the deadline for such production.

On March 14, 2006, the Health Net Defendants notified the Court by letter that they could not comply with the Court's deadline.  The Defendants explained that they would begin production to Plaintiffs on Friday, March 17, 2006, but requested an extension up to and including September 14, 2006 to complete their production.  This Court had ordered production of "all responsive e-mails" on November 16, 2005, over four months earlier.  Had Defendants complied with the November 16th order, their production of e-mails would be nearly complete by now.  This Court will however set a new deadline for production in the Order accompanying this decision.

B.    Pattern of Non-compliance with Discovery Orders

A pattern of non-compliance with discovery orders of the Magistrate Judge has become distressingly commonplace.  Defendants have caused Plaintiffs to conduct expensive depositions without full production of documents relevant to each deponent without even the courtesy of informing Plaintiffs' counsel that the document production ordered by the Magistrate Judge to be

completed prior each deposition had not been completed.  This has occurred repeatedly in this case.

Defendants' counsel knew at the time of multiple depositions that they had not completed review

of each deponent's e-mails in advance of those depositions, but did not disclose that to Plaintiffs or

the Magistrate Judge who had so ordered.  See 11/22/05 Transcript at 11, ln.17-23 and at 13-14, ln.

25, 2-8.   This silence implied that Defendants had complied with the Magistrate Judge's Order,

when in fact they had not.

Recently, in a December 28, 2005 Order, Judge Shwartz ordered the deposition of former

Health Net, Inc. CEO, Jay Gellert, whom plaintiffs had not previously deposed based on Defendants'

representations that Mr. Gellert "did not know about the challenged practices in this litigation."

Judge Shwartz ordered that, in connection with his deposition, Mr. Gellert shall produce all

documents, in whatever form they are kept, that are responsive to the discovery demands served in

this case.  A month later, Judge Shwartz learned that Defendants were not searching for responsive

e-mails nor attempting to restore and search Health Net's e-mail system.  This discovery lead the

Magistrate Judge to issue a remedial Order on January 30, 2006.

C.    January 30, 2006 and March 9, 2006 Orders

On January 30, 2006, Judge Shwartz noted that the Court had already ordered Defendants

to produce all e-mails responsive to discovery demands and found that "had the defendants searched

for responsive e-mails when the discovery demands were made instead of long after discovery

closed, the cost and expense that they claim they must now incur would not have been present."  She

then ordered the Defendants to produce "all emails, including those located in the backup email

system/archived emails, that are responsive to the discovery demands served in this case."

Defendants sought reconsideration of Judge Shwartz's January 30th Order, claiming that it

required the Defendants to conduct a search that would be unduly burdensome, in terms of time and expense.  On March 9, 2006, Judge Shwartz granted in part and denied in part Defendants' motion for reconsideration.  She found that Defendants deliberately failed to preserve and diligently search for and produce all responsive documents from all places and people the Defendants believed might have possession of such documents.  She also concluded that the unavailability of responsive materials and the difficulty involved in restoring such documents was due to Defendants' own failure to timely provide responsive discovery.  In light of these findings, Judge Shwartz ordered Defendants, no later than April 4, 2006, to "review and produce the e-mails of all employees (past and present) who (1) testified at hearings or depositions or were mentioned during any hearing or deposition; (2) were listed in the proposed final pre-trial order, or (3) were identified in any way in discovery, including but not limited to the names (a) listed on any documents, whether in the text, as an author or as a recipient of any document, including emails, (b) identified by Judge Hochberg on February 28, 2006, and (c) identified in the letter of March 17, 2004, which is attached to the certification of Heather Taylor, dated December 12, 2005, at Exhibit A."

On March 24, 2006, Defendants appealed Magistrate Judge Shwartz's March 9, 2006 Order and on March 28, 2006, they sought permission to file a Motion on Short Notice for stay of the March 9, 2006 Order.

D.    <u>Standard of Review</u>

The Magistrates Act requires this Court to apply the clearly erroneous standard of review upon appeal of a magistrate judge's report on certain pretrial, non-dispositive motions. 28 U.S.C. § 636(b); <u>see</u> <u>also</u> <u>McDonnell Douglas Corp. v. Commodore Bus. Machs. Inc.</u>, 656 F.2d 1309, 1313 (U.S. App., 1981).  A magistrate judge's rulings concerning discovery,

including sanction orders, are non-dispositive motions.  See, e.g., Cunningham v. Hamilton County, 527 U.S. 198, 201 (1999); Bowen v. Parking Authority, 214 F.R.D. 188 (D.N.J. 2003); Tarlon v. Cumberland Co. Corr. Facility, 192 F.R.D. 165 (D.N.J. 2000); Fitz Inc. v. Ralph Wilson Plastics Inc., 184 F.R.D. 532 (D.N.J. 1999); see also L. Civ. R. 72.1(a), cmt. 3 (noting that orders compelling document production and imposing sanctions for discovery abuses are non-dispositive motions). Thus, a magistrate judge's adjudication of a non-dispositive motion will be set aside only if the order is found to be clearly erroneous or contrary to law.  Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1111, 1113 (3d Cir. 1986), cert. denied, 484 U.S. 976, 108 S. Ct. 487 (1987) (citing 28 U.S.C. § 636 (b)(1)(A)); see also Fed. R. Civ. P. 72 (a); L. Civ. R. 72.1(c)).  A magistrate judge's order is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co. of Wis., 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting United States v. Gypsum Co., 333 U.S. 365, 395 (1948)).  To be contrary to law, a magistrate judge's order must have "misinterpreted or misapplied applicable law." Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162, 164 (D.N.J. 1998).

E.    Analysis

Defendants argue in their appeal that Judge Shwartz did not properly consider the expense, burden, and justification for discovery that the Rules of Civil Procedure, in particular Rule 26(b), require.  Rule 26(b) provides that:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information

16

> sought; or (iii) the burden or expense of the proposed discovery outweighs the likely
> benefit, taking into account the needs of the case, the amount in controversy, the
> parties' resources, the importance of the issues at stake in the litigation, and the
> importance of the proposed discovery in resolving the issues.

Defendants argue that Magistrate Judge Shwartz's March 9th Order does not reflect a balancing of the factors set forth in Rule 26. They also contend that Judge Shwartz's Order is overly burdensome and ask that it be vacated, or, at a minimum, that the search and restoration of e-mails be limited by time period, specific employees and/or key words.

There is no evidence to suggest that the discovery ordered in the March 9th Order is cumulative or duplicative of the discovery already produced in this case. On the contrary, one of the reasons Judge Shwartz ordered Defendants to produce such a large number of e-mails is because so many e-mails were not produced during the discovery period. As described above, volumes of e-mails that were created during or prior to the discovery period, and which should have been produced long ago, appeared for the first time during the course of this Court's Rule 37/Integrity hearing after the close of discovery. Defendants admit that, to this day, they have not reviewed for production the vast majority of the thousands of e-mails contained on the company's backup tapes, with no authority for such conduct.

Moreover, Plaintiffs' efforts to obtain internal Health Net e-mails through the process of discovery were often stymied by Defendants. In some instances, Health Net's outside counsel were unaware of the extent to which their clients were not complying with court orders. For example, outside counsel James DelBello, Esq., acknowledged on March 9, 2006, that Plan Counsel Eileen O'Donnell's recently-produced e-mails concerning the NJDOBI and restitution issues should have been produced in 2003 when discovery about those issues was underway. 03/09/06 Transcript at

17

134, ln. 12-22.  Outside counsel Heather Taylor, Esq., also testified on March 1, 2006, that she was unaware of Health Net's practice of putting e-mails on backup tapes 90 days after creation, which made it impossible for most employees to access the e-mails through a search of their own.  Nor was Ms. Taylor told of Health Net's practice of permitting employees to delete e-mails within 30 days of creation or receipt, which could result in spoliation.  03/01/06 Transcript at 2-3, 5-6.  Given that even Health Net's own outside counsel did not know about such e-mail retention practices within the company, and that such outside counsel's "search" for e-mails consisted of asking certain employees to search their own emails,[4] it cannot be said that plaintiffs had any real opportunity to obtain the e-mails they sought during the discovery process.

This Court is aware that a significant amount of time and expense is required to comply.  However, Defendants' predicament is due largely to their own repeated failures to respond in a timely manner to discovery requests and to court orders.  The e-mails that are the subject of the Court's recent orders should have been produced long ago in response to Plaintiffs' document demands and in compliance with numerous court orders.

- On June 25, 2003, Judge Shwartz ordered Defendants to "provide a response to plaintiffs' demand for documents, in whatever form they exist, related to Healthnet's compliance with the state [of New Jersey] consent order."

- On July 23, 2003, Judge Shwartz ordered Defendants to produce "any and all emails containing information related to the HIAA issue and the Consent Order."

- On November 5, 2003, Judge Shwartz ordered Defendants to produce all non-privileged documents reflecting investigations of HNNE by insurance regulators.

- On November 18, 2003, Judge Shwartz ordered Defendants to respond to all

---

[4] The Court does not address at this time the apparent conflict between the testimony of Health Net outside counsel and Health Net Plan Counsel, Eileen O'Donnell, who stated that she was never asked to search her own e-mail in any systematic or thorough manner.

discovery demands in the McCoy case.

- On November 30, 2004, Judge Shwartz ordered that "all documents for all Healthnet entities shall be produced no later than January 10, 2005."

- On February 16, 2005, Judge Shwartz ordered Defendants, no later than February 25, 2005, to "produce all documents that relate to any and all regulators' past or ongoing investigations of the Health Net entities handling of out-of-network activities" including *but not limited to* various specific types of documents.

- On April 5, 2005, Judge Shwartz ordered Defendants to produce "all outstanding discovery responses to all outstanding discovery demands, including but not limited to those that were the subject of this Court's Order of December 17, 2004."

Judge Shwartz also repeatedly ordered Defendants to retain potentially relevant evidence by

issuing the following Orders:

- May 9, 2003 Order following teleconference at which the parties "acknowledged their obligation to retain potentially relevant evidence related to this case;"

- May 28, 2004 Order directing defense counsel to "further ensure that an appropriate communication is sent to those employees who may have responsive documents" and directing them to "make additional inquiries of those individuals they believe would be most responsible for the production of responsive documents;"

- August 18, 2004 Order making clear that discovery demands shall be served on and responded to by all Healthnet entities, regardless of geographic location, and requiring all Healthnet entities to produce certifications setting forth (1) their retention policies, (2) steps taken to ensure preservation of information potentially relevant to these cases, (3) a copy of any notice to preserve, (4) a list of individuals to whom the notice was provided, and (5) how the preservation was implemented and monitored;

- October 7, 2004 Order directing the parties to submit a joint proposed form of notice to preserve records and a consent order setting forth the date on which the Defendants shall produce supplemental certifications concerning the records preservation issues raised at earlier hearings;

- October 13, 2004 Order again directing the parties to submit a joint proposed form of notice to preserve records and to submit a consent order setting forth the date on which the Defendants shall produce supplemental certifications concerning the records preservation issues raised at earlier hearings.

Defendants' failure to preserve and produce relevant e-mails also led to Judge Shwartz's decision to grant plaintiffs' request for an adverse inference instruction regarding e-mails that Robert McCartt, a Rule 30(b)(6) witness regarding Health Net's practices for its California beneficiaries, admittedly deleted.  See October 17, 2005 Order.[5]

At no time did Defendants inform either Plaintiffs or the Magistrate Judge as to how they stored e-mails; the numbers of e-mails needed to be searched; the cost of such search; or a plan for allocating the burden of e-mail production.  Had candid disclosures to the Magistrate Judge occurred,

---

[5] This Court affirms Magistrate Judge Shwartz's October 17, 2005 Order granting a spoliation inference to Plaintiffs regarding the e-mails deleted by Robert McCartt, an employee of Health Net of California ("HN-CA").  Defendants argue in their appeal that Judge Shwartz erred by granting an adverse inference against Defendants based on Mr. McCartt's failure to preserve his e-mails regarding the 2000 audit of Health Net of California by the Department of Managed Health Care.  Defendants contend that the e-mails could have been deleted prior to a time when Health Net, Inc., HN-CA's corporate parent, had an obligation to ensure that HN-CA preserve e-mails, which they say did not occur, if at all, until late 2003 or early 2004.

This reasoning is not persuasive given that Plaintiffs' _Wachtel_ complaint, which was removed to this Court in August 2001 and amended in December 2001, referred to activity throughout the United States and alleged claims on behalf of a nationwide class of _all_ Health Net beneficiaries; that Plaintiffs' discovery demands sought information from Health Net subsidiaries, affiliated entities, and from persons of which Defendants had control; and that Defendants opposed a preservation order in this litigation in September 2004, arguing that the preservation orders entered in December 2000 and January 2001 in the MDL litigation involving Health Net were sufficient to ensure preservation of documents relevant to this litigation. Furthermore, as Judge Shwartz noted in her Opinion, "it appears that many of the Health Net's high-level employees were unaware of either this litigation or their obligation to preserve documents."  Judge Shwartz's conclusion has, unfortunately, only found further support in the record developed by the Court in the time since her decision.  The Court finds that Judge Shwartz did not err in her decision.

This Court also affirms the portion of Judge Shwartz's October 17, 2005 Order that directed Defendants to pay Plaintiffs' reasonable attorneys fees and costs associated with bringing the motion to compel the production of fee screens and explanations of benefits.  Judge Shwartz was justified in ordering payment of fees given that Plaintiffs expended unnecessary time and money to bring the motion to compel as a result of Health Net's failure to timely respond to Plaintiffs demands for fee screens.

an appropriate order could have been tailored to deal with these issues and keep costs down.[6]  The huge costs now being complained of could have been minimized by timely compliance when the e-mails were more current.

Moreover, the financial burden is not one-sided.  Plaintiffs have taken many depositions and conducted evidentiary hearings of witnesses without the benefit of the document production ordered by the Magistrate Judge, and without even being informed that the documents ordered by the Court to be produced had not in fact been fully produced.  They will now face great cost in time and money to decide whom to re-depose.  The Court cannot redo the hearings that have gone on for months, and thus Plaintiffs will have lost the benefit of court testimony that might well have been beneficial to their case.

Defendants had three years of open discovery in which to produce e-mails responsive to Plaintiffs' document requests.  Never during this period did they inform Judge Shwartz of any difficulties they had retrieving e-mails.[7]  Boilerplate objections simply stating "burden" did not constitute remotely adequate notice to the Magistrate Judge or Plaintiffs that the backup tapes were not being searched and that most HNNE employees, if asked to search on their own, could not access e-mails older than 90 days.

---

[6] Many cost-sharing options could have been available to Defendants at the outset of discovery, had they been candid with the Court about the e-mail policies of Health Net and the expense of producing that discovery.  See e.g., Zubulake v. UBS Warbug LLC, 217 F.R.D. 309 (S.D.N.Y. 2003).

[7] See 02/28/06 Transcript at 92, ln. 18-25, 93 ln.1-22 ("THE COURT: There was no burdensomeness objection that said we have to go back to a back-up tape because after 90 days our e-mails go to a back-up tape.  There was nothing like that in any document drawn to this court's attention.  Am I incorrect?

MR. CALVERT:  I believe you're correct, at least I haven't see any such document.")

Defendants now assert that compliance with this Court's orders will cost them millions of dollars and take months to complete. Although the cost of compliance is indeed high, Defendants have litigated this case without regard to cost when it has been in their interest to do so. The cost Defendants must now incur is a direct result of non-compliant and deceptive discovery tactics and disregard of court orders throughout the course of discovery. This is evidenced by the various sanctions Judge Shwartz has imposed.

- On February 16, 2005, Judge Shwartz granted Plaintiffs' application for sanctions arising from Health Net's failure to comply with her Orders requiring production of documents related to regulatory investigations of Health Net entities' handling of out-of-network activities.

- On August 31, 2005, Judge Shwartz excluded 16 of Defendants' trial witnesses for failure to disclose sufficiently the identity of those individuals pursuant to Fed. R. Civ. P. 26(a)(1)(A).[8]

---

[8] This Court affirms Judge Shwartz's August 31, 2005 Order excluding several of Defendants' trial witnesses. Judge Shwartz found that 16 of the witnesses identified by Defendants in their final pretrial order had not been previously disclosed pursuant to the requirements of Fed. R. Civ. P. 26. She found Defendants' boilerplate reference to "[a]ll persons named in any document produced by any party, all persons named in any pleading or depositions, and such other individuals as further investigation and discovery may reveal" did not provide sufficient information about individuals likely to have discoverable information.

After a careful analysis, Judge Shwartz determined that the sanction of exclusion was appropriate based on (1) Defendants' failure to justify their lack of disclosure; (2) the prejudice suffered by Plaintiffs, who likely would have conducted discovery differently and who expended time and resources on deposing "second best" witnesses; (3) the difficulty and disruptiveness of conducting 16 additional depositions and amending summary judgment motions; and (4) Defendants' bad faith and wilfulness in failing to comply with court orders and discovery obligations.

This Court finds no clear error in Judge Shwartz's conclusions. As explained above, Defendants have made a practice of evasive discovery responses in this litigation and have relied on boilerplate responses, claiming they are sufficiently specific to provide notice to Plaintiffs and the Court when in fact they serve to obfuscate the truth. Defendants' aggressive strategy and persistent pattern of non-disclosure have lead to the repeated discovery violations discussed in this opinion and in others by Judge Shwartz. Based on this record, the Court finds sufficient reason to affirm Judge Shwartz's August 31, 2005 Order.

- On October 17, 2005, Judge Shwartz required Defendants to pay reasonable attorneys fees for Plaintiffs' application to compel production of various documents and granted Plaintiffs' request for an adverse inference instruction regarding e-mails that were deleted by a Health Net 30(b)(6) witness.

Simply put, Defendants' history of violating discovery orders has caused enormous unnecessary delays throughout the discovery process, which has in turn contributed to the cost Defendants must now incur in order to recover documents that should have been produced long ago.

In an effort to obtain production of those e-mails that are most important, and to speed up the completion of the production for the benefit of all involved, this Court will limit the scope of Judge Shwartz's March 9, 2006 Order to cover initially the individuals listed in footnote 9 below.[9]  The earliest production shall be of the list announced by this Court on February 28, 2006.[10]  The production of e-mails for the remaining individuals listed in footnote 9 shall then immediately follow.  The Court will limit the production to e-mails created or received between July 1, 1998 and

---

[9]  These individuals are: Mark El-Tawil, Karen Anderson, Kate Longworth-Gentry, Bruce Anderson, Nancy Starts, Nancy Bushnell, Maria "Lisa" Dietz, Mike Sydlaske, Barry Averill, Bill Carr, Franklin Tom, Dan Sibol, Eileen O'Donnell, Paul Dominianni, Steve Camper, Joe Kempf, Tom Messer, Liz Guerin, Marv Rich, Curt Westen, Jay Gellert, Carol Richey, Frank Partridge, Karen Davezac, Rae Joyce,  Bob McCartt, Gay Ann Williams, Steve Lynch, Chris Wing, Mark Dashiell, Hilda Gonzalez, Bob Morris, Patter Weller, Pennell Hamilton, Jeff Folick, Eileen Aven, Joe Singer, Tim Mondon, Bill Van Gieson, Anton Glenbonovitch, Alida Dodd, Maureen White, Robert Redding, Marguerite McAleenan, Patricia Normington, Linda Suriano, Don Wallace, Andrea Clapp, Ken Shoquist, Julio Marques, Paul Lambdin, Ardeth Onofrio, Dee Dee Iverson, Mary-Ann Gaynor, Tracy Corraro, Joan Kmotorka, Joyce Li, Greg McDonald, and Tina Stroup.

[10]  These individuals are: Barry Averill, Dan Sibol, Curt Westen, Carol Richey, Karen Davezac, Rae Joyce, Hilda Gonzalez, Bob Morris, Patty Weller, Pennell Hamilton, Joseph Singer, Tim Mondon, Bill Van Gieson, Pat Normington, Mike Sydlaske, Paul Dominianni, Tom Messer and Eileen O'Donnell.

January 10, 2005.[11]

Nothing herein limits further orders of the Magistrate Judge to search e-mails of other persons or other time periods. If Plaintiffs need to re-depose any witness after review of such emails, they may do so and Defendants shall bear the costs and attorneys fees of such depositions.

## IV.   Appeal of Judge Shwartz's July 28, 2005 Order

Plaintiffs have appealed Judge Shwartz's July 28, 2005 Order denying their request to supplement the report of their expert, Dr. Bernard Siskin, regarding the PHCS and MDR databases distributed by Ingenix and used by Health Net to calculate out-of-network reimbursements. Plaintiffs argue that Health Net intentionally withheld information regarding its use of MDR data in order to derail Plaintiffs' pursuit of third party discovery about the data, which is the subject of the supplemental report. Defendants counter that Plaintiffs had plenty of time to seek third party discovery about the Ingenix databases and that any supplemental report at this stage would prejudice Defendants, who would have altered their approach to the Ingenix depositions and who would now be restricted to challenging only the supplemental aspects of Dr. Siskin's report.

Defendants argue that Plaintiffs knew, in November and December 2003, that this Court was interested in the Ingenix databases, but did not serve third party subpoenas on Ingenix until October 2004. Prior to June 2004, however, Plaintiffs did not know that Health Net's California and Oregon plans used Ingenix's MDR database for determining out-of-network claims, despite the fact that

---

[11] Defendants have also appealed Judge Shwartz's December 28, 2005 Order. As modified herein, Judge Shwartz's Order is affirmed. Defendants also objected to Judge Shwartz's recommendation of sanctions based on Health Net's failure to search the e-mails of all employees for responsive documents. This Court will address the recommendation for sanctions in connection with its decision regarding the Rule 37/Integrity hearing and the briefing submitted in connection thereto.

Plaintiffs had specifically requested information from Health Net about its use of MDR data.  In fact, at the class certification hearing on June 15, 2004, Health Net's counsel denied that the company's western plans used MDR data only to be contradicted ten days later when, in a court-ordered certification, Health Net disclosed that its western plans use the MDR database from Ingenix for processing out-of-network claims.

According to an e-mail from Robert McCartt, which was produced to Plaintiffs on August 10, 2005 in conjunction with the Special Master's review of Defendants' privilege logs, Health Net of California was using MDR data to calculate out-of-network reimbursements at least as early as January 2004.  Yet Mr. McCartt neglected to mention this fact in his January 27, 2004 certification, leaving Plaintiffs in the dark until June 2004 when they sought Judge Shwartz's assistance in order to get a straight answer.  Such evasive discovery practices are distressingly commonplace in this case and certainly could have delayed Plaintiffs' pursuit of third party discovery as to the MDR database.

Absent surprise or bad faith, an expert may testify beyond the scope of his report.  See Bowersfield v. Suzuki Motor Corp., 151 F. Supp. 2d 625, 631-32 (E.D. Pa. 2001); Fritz v. Consol. Rail Corp., Civ. A. No. 90-7530, 1992 WL 96285 at *3 (E.D. Pa. Apr. 23, 1992) (citing DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193 (3d Cir. 1978)).   In light of Defendants' misrepresentations this Court finds sufficient justification for allowing Plaintiffs to supplement the report of their expert, Dr. Bernard Siskin.  This Court therefore reverses Judge Shwartz's Order and grants Plaintiffs' Application.  In so ordering, this Court is not reopening discovery.

**WHEREFORE IT IS** on this 5th day of May, 2006,

**ORDERED** that, no later than May 19, 2006, Plaintiffs shall, consistent with the specific subject matter areas stated in this opinion, designate those documents in Defendants' privilege logs

as to which Special Master Wolin determined that the attorney-client privilege or work product doctrine applies and as to which they seek to pierce those privileges under the crime-fraud exception; and similarly designate those sections of the March 17, 2005 hearing transcript that they believe may be disclosed under the crime-fraud exception; and it is further

**ORDERED** that once the Court has received the Plaintiffs' designated documents, the Court will decide, based on the volume of the documents submitted for review, whether the *in camera* review of the documents shall be conducted by a Magistrate Judge of this Court or shall be referred to the Special Master; and it is further

**ORDERED** that Defendants shall produce the e-mails for the persons identified by this Court's February 28, 2006 Order no later than June 1, 2006;[12] and it is further

**ORDERED** that Judge Shwartz's March 9, 2006 Order is **AFFIRMED**; and it is further

**ORDERED** that Defendants' Motion on Short Notice for a stay of Judge Shwartz's March 9, 2006 Order is **DENIED**; and it is further

**ORDERED** that Defendants shall comply with Judge Shwartz's March 9, 2006 Order, as modified herein, with all deliberate speed and weekly on a rolling basis (as documents are located) and shall submit weekly reports to the Court detailing which tapes and e-mails have been restored, searched and produced, the number of persons working on such production, and the number of hours spent by each on the production, and the entire production shall be completed by July 15, 2006; and it is further

---

[12] The February 28th Order requires production of all e-mails related to the HIAA issue of outdated data including any e-mails that included, forwarded, attached or otherwise referred to other electronic data regarding HIAA, such as the spreadsheets and/or calculations of the First and Second Restitution amounts. If the electronic data attached to the e-mail has already been produced, it shall not be produced again, but its bates number shall be annotated onto the e-mail.

**ORDERED** that Judge Shwartz's July 28, 2005 Order denying Plaintiffs' request for leave to file a supplemental expert report of Bernard Siskin, Ph.D. is **REVERSED**; and it is further

**ORDERED** that Plaintiffs shall submit a supplemental report by their expert, Dr. Bernard Siskin, no later than June 15, 2006; and it is further

**ORDERED** that Judge Shwartz's August 31, 2005 Opinion and Order excluding certain defense witnesses for failure to disclose sufficiently the identity of those individuals pursuant to Fed. R. Civ. P. 26(a)(1)(A) is **AFFIRMED**; and it is further

**ORDERED** that Judge Shwartz's October 17, 2005 Order granting sanctions against Defendants for spoliation is **AFFIRMED**; and it is further

**ORDERED** that Judge Shwartz's December 28, 2005 Order is **AFFIRMED**.


/s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.

27