# NIXON PEABODY LLP

### ATTORNEYS AT LAW

437 Madison Avenue
New York, New York 10022-7001
(212) 940-3000
Fax: (212) 940-3111

Cathy Fleming
Direct Dial: (212) 940-3783
Direct Fax: (866) 403-7673
E-Mail: cafleming@nixonpeabody.com

May 31, 2007

Hon. Faith S. Hochberg
United States District Court
District of New Jersey
50 Walnut Street
Newark, NJ 07102

RE:     McCoy v. Health Net, Inc., et al.
        Civil Action No. 03-cv-1801 (FSH)
        Wachtel, et al. v. Health Net, Inc., et al.
        Civil Action No. 01-cv-4183 (FHS)

Dear Judge Hochberg:

Pursuant to the Court's Order of January 30, 2007, as modified several times, enclosed please find an original and redacted version of my Final Report in these matters.

I have filed the original under seal and efiled with redactions because there are references to Health Net counsel's conversations with outside counsel. During our proceedings there was agreement among counsel that Health Net counsel could testify with a limited waiver of privilege which would be for purposes of these proceedings only. Accordingly, in an exercise of extreme caution, I have excised in the publicly filed version the references to those conversations. I have provided to both the Court and all counsel copies of both the original and the unredacted versions.

10359685.1

I await further instructions from the Court.

Respectfully submitted,

Cathy Fleming

Enclosures
cc: Hon. Patty Shwartz
(by email)
Barry M. Epstein Esq.
Barbara G. Quackenbos Esq.
Sills Cummis Epstein & Gross

Jay Calvert Jr. Esq.
James DelBello Esq.
Colleen Meehan Esq.
Robert White Esq.
George McClellan Esq.
Morgan Lewis & Bockius, LLP

Herve Gouraige Esq.
Barry Kazan Esq.
Richard David Esq.
Epstein Becker & Green

John Gibbons Esq.
Kevin McNulty Esq.
Gibbons Del Deo

D. Brian Hufford Esq.
Robert Axelrod Esq.
Pomerantz Haudek Block Grossman & Gross

Jonathan Alpert Esq.
The Alpert Law Firm

Dave Stanley Esq.
The Cueno Law Group

10359685.1



NIXON PEABODY LLP

A T T O R N E Y S   A T   L A W

437 Madison Avenue
New York, New York 10022-7001
(212) 940-3000
Fax: (212) 940-3111

Cathy Fleming
Direct Dial: (212) 940-3783
Direct Fax: (866) 403-7673
E-Mail: cafleming@nixonpeabody.com

May 31, 2007

**Original Filed Under Seal**
**REDACTED VERSION**
Hon. Faith S. Hochberg, U.S.D.J.
United States District Court
50 Walnut Street
Newark, NJ 07102

> RE:   McCoy v. Health Net, Inc., et al.
>        Civil Action No. 03-cv-1801 (FSH)
>        Wachtel, et al. v. Health Net, Inc., et al.
>        Civil Action No. 01-cv-4183 (FHS)

Dear Judge Hochberg:

This report is respectfully submitted pursuant to the Court's January 30, 2007 Order reporting on the matters delegated by the Court to me as Special Master. I have not annexed transcripts, evidence, or exhibits, but those items, as well as the record of the proceedings under my review, are available for inspection by the Court if requested.

**Scope of the Report**

My charge, as set forth in the Court's January 30, 2007 Order, was to do the following:

10603802.1

Insure that all Health Net entities ("Health Net") have complied with the discovery orders identified in the Rule 37 Opinion and the Court's May 5, 2006 Opinion, with priority to insure compliance with the May 5, 2006 opinion.[1]

**The Proceedings**

In carrying out my charge as Special Master, the following protocols were used:

1.  Conferences with counsel;

2.  Written submissions by counsel (as requested by the Special Master); and

3.  Hearing testimony before a court reporter involving six witnesses over six days.

I wish to advise the Court that counsel for all parties in this matters were in all respects responsive and diligent.  I commend the work product, civility and competence of all counsel who participated.[2]

**May 5, 2006 Order**

The pertinent portions of the May 5, 2006 Order require that defendants:[3]

1.  produce emails for the persons identified in the Court's February 28, 2006 Order

    [which are 18 custodians identified in fn 10 on p.23 of the May 5, 2006 Order].

    That Order required production of all emails related to the HIAA issue of

    outdated data; and

---

[1]   The other orders which the parties agree are pertinent to my review are:

   a.   Order dated November 18, 2003;
   b.   Order dated August 18, 2004.[1]
Plaintiffs additionally suggested that I should determine compliance with the Court's July 23, 2003 Order. I respectfully request guidance from the Court as to whether I should issue a supplemental report on these issues and whether my charge is to determine whether there was compliance at the time required by the Orders or by now.

[2]   Sills Cummis (Barbara Quackenbos, Barry Epstein, Michael Fried), Morgan Lewis & Bockius (Jay Calvert, Jr., James DelBello, Coleen Meehan, K. Catherine Roney), Pomerantz Haudek Block Grossman & Gross (Robert Axelrod).

[3]   Each of the tasks identified in the May 5, 2006 Order had 2006 deadlines and none of the tasks referenced were accomplished by those deadlines.  The Order appointing the Special Master was January 30, 2007.  This Report identifies whether the tasks were accomplished as of the date of the Report, which is May 31, 2007.

2.      produce emails created or received between July 1, 1998 and January 10, 2005 for the 59 custodians (the individuals identified in the May 5, 2006 Order, p. 23, fn 9) on a rolling basis; and

3.      submit weekly reports to the Court detailing which tapes and emails have been restored, searched and produced, the number of persons working on such production, and the number of hours spent by each of the productions.

In addition, the Special Master is required to determine and report on:

a.      which e-mails Health Net was unable to retrieve, if any;

b.      the reasons for such non-retrieval; and

c.      the individuals and processes responsible for the lack of preservation and/or destruction of e-mails.

**Findings as to May 5, 2006 Order:**

I.      **Health Net Has Produced All Emails From All Sources Which Exist and of Which it is Aware as of May 31, 2007**

1.      As of May 31, 2007, Health Net has produced whatever responsive emails it physically could produce to plaintiffs; however, there is no way to determine conclusively whether all responsive emails were preserved by the users and/or back-up tapes since there are corrupted back up tapes and periods for which no back up tapes were made or left intact;

2.      Health Net submitted weekly reports to the Court detailing its progress, as mandated, through February 22, 2007, Health Net's final report, which covered all restored tapes through that date.

3.      *However*, in or about March 2007, Health Net discovered an additional 72 tapes and 74 home drives.  As of May 31, 2007, all responsive emails from those

recently found media have been produced to plaintiffs; no certification on those final media has been produced.  See Section, <u>infra</u>, "Recently Discovered Documents."

## II.       **Which Emails Was Health Net Unable to Retrieve**

There is no way to determine what emails, if any, were unable to be retrieved. There are missing tapes for certain periods and damaged back up media so they cannot, by definition, be searched.  If a user kept an email in his own mailbox for a period of time until a functioning back up tape was created, it would have been captured.  If, however, the email was deleted prior to being captured on a functioning back up tape, it is gone.

<u>The "Superchart"</u>

At my request, Health Net prepared a "Comprehensive Chart of Restoration of Mailboxes of 59 Enumerated Custodians Pursuant to the May 5, 2006 Order" ("Superchart").

This very comprehensive chart describes for each of the 59 custodians, among other items, month by month:

- Whether the mailbox was restored;

- What was the back up system;

- What was the back up schedule;

- The back up status of server; and

- Whether the back up tape could be restored.

The Superchart also shows that even when there are periods without back up tapes, there are emails which were captured at later dates (because they were still in the user's mailbox) for months where there were no back up tapes.  This

does confirm that, if a user had an email from, e.g. May 1, 2001 still in his mailbox on May 1, 2002, that a back up tape in May 2002 would capture that email from a year earlier.

However, if a user deleted the email between May 2, 2001 and April 30, 2002 – that email would not be recovered from a May 2002 back up tape.

Thus, the Superchart shows that, for the 59 custodians in the required time frame (July 1998 – January 2005):  there are 2,183 months (total) during which a custodian was employed at Health Net but for which there is no back up tape.[4]

As some examples of missing months of tapes:

| | |
|---|---|
| CEO Jay Gellert | (missing 46 months of back up tapes) |
| Hilda Gonzalez | (missing 46 months of back up tapes) |
| Nancy Starts (Records Comm.) | (missing 69 months of back up tapes) |

Reasons for Such Non Retrieval

As of May 31, 2007, the reasons for non-retrieval are technological only:  some back-up media for the email systems were not preserved due to overwrite procedures and some back-up media was unable to be retrieved because of damage to the media.  Health Net has devoted substantial resources to restoring what media it found and could be restored, and it appears that which all media which was located has, to the best of technology's capability, been restored.

---

[4] As noted, even with missing tapes, there are emails dated within the missing months, although there is no way to quantify how many emails for each month there are.  If there is one email dated in a month found by a later tape for the missing month, it is noted as a "histogram."  There are 563 months where there is no tape and no email in the month picked up by a later tape.

NIXON PEABODY LLP

III.    **Who Were the Individuals and Processes Responsible for the Lack of Preservation and/or Destruction of Emails**

1.      Destruction of Emails:

There was no evidence of intentional or deliberate destruction of emails.  The only evidence before the Special Master relates to the unavailability of back up media for various time frames or the "auto delete" function of certain users' mailboxes.  There is no evidence of destruction of emails by any individual.  The evidence pertains to unavailability of back up (or disaster recovery) tapes which are not available because: (a) the back up tape failed at the time it was made; (b) the back up tape was lost; (c) the back up tape was damaged and cannot be read; (d) the back up tape was not located; or (e) the user was, at least for some time during the relevant time frame, on a server which had automatic overwrite and thus there are no back up tapes for that period.

2.      Lack of Preservation:

The lack of preservation was caused because of lack of direct communication between Health Net counsel and Health Net IT.  In 2001 when Wachtel was filed and 2003 when McCoy was filed, no one at Health Net Legal advised the IT Department: (a) to suspend the auto delete functions (as it did in October 2004) on email systems with such features; (b) to suspend overwrite programs for all email

back up systems which had overwrites; and (c) to maintain and keep safe the back up tapes.[5]

There was a lack of preservation of back up media (and potentially emails subject to auto delete systems) which resulted from a variety of factors:

<u>Health Net Counsel's Actions, Including</u>:

a.   In-house counsel (in conjunction with outside counsel) relied on a litigation hold in an MDL case which permitted "ordinary course of business" tape overwrites and auto delete policies and did not institute a specific litigation hold/document preservation procedure which covered these areas[6] for the Wachtel and McCoy cases;

b.   In-house counsel did not consider that document preservation obligations extended to back-up media and auto delete systems and did not take steps to stop "overwrite" or auto delete until October 2004;

<u>IT Department Procedures</u>:

c.   The IT department was merging IT systems and servicing different systems with different features without communicating to in-house counsel what they were doing;

d.   The technology and procedures in place for preserving media back up did not preserve all emails;[7] and

---

[5]   My task under the January 30, 2007 Order is to identify factually <u>why</u> the preservation of back up tapes was not accomplished. I have not understood my charge to be to make a recommendation as to whether there was a legal obligation to do so, and I do not offer a legal opinion either way.

[6]   Health Net did provide verbal instructions to identified custodians to maintain its documents, but it did not do a specific Wachtel/McCoy notice or specific instruction to departments (as was being done with the MDL order) until October 2004.

[7]   No back up system is 100% at preserving emails. Even with daily back up, emails deleted during the course of the day may not appear on back up. In addition, failures still occur.

  e. IT did not understand that it should be taking these steps.

**Other Pertinent Facts**

  Health Net has within the past year done a thorough and extensive search and restoration project to recover back-up tapes (and home drives) which might, and did, have responsive emails for the 59 custodians identified in the May 5 Order.[8] The process was difficult because the email systems from 1998 throughout 2005: (a) were different throughout Health Net entities, a result of mergers of businesses in the period; and (b) were not adequately and uniformly prepared, kept, inventoried and stored. Those factors, which are under control of IT personnel at Health Net, made the process of retrieving and restoring very difficult.

  From 1999 to 2005, Health Net did have in place policies and procedures for document retention, as well as policies for litigation holds.

  It is fair to remember that the technology in the 2001 era was less advanced than compared to 2007's capability. Today, including at Health Net, email retention systems are superior and are better able to back up almost all emails, although even the advanced systems can still suffer from failures, damage, deletions by the users between back ups, and other fallibilities. As of February 2006, Health Net instituted a sophisticated email archive system which captures emails which go in and out.



---

8 Counsel for Health Net testified that Health Net produced approximately 3.7 million pages in discovery. Their "restoration" project has, according to plaintiff's counsel, resulted in more than 1,000,000 pages, much of which was not produced in the initial discovery.

NIXON PEABODY LLP



Finally, there was no evidence of intentional, malicious or bad faith conduct. Rather, the gaps are the result of lack of specific instructions to change the "ordinary course" of email and technological, storage and inventory failures.

**Discussion:**

Document Policies

At least as of March 1999, Health Net had document policies in place, portions of which are relevant here:

- Emails were designated as "business records;"

- Employees of Health Net were tasked with the individual responsibility to retain their own business records;

- A policy that, if Health Net became involved in litigation, all document destruction was to be suspended; and

- In the event of litigation, the Legal Department was charged with notifying the Record Retention Department of the specific records required for the case. Records was then to notify affected managers and departments [via email] to suspend destruction.

July 2003 Records Policies

As of July 1, 2003, Health Net updated its record retention policies. Several of those policies are pertinent here:

---

9    The focus of the proceedings was to determine facts. Only Health Net lawyers testified and I found their testimony about what was discussed with outside counsel to be credible. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ Because no outside counsel testified, I cannot make any determination as to outside counsel's knowledge. On May 8, 2003, McCarter & English advised Judge Schwartz that Health Net understood its discovery obligations and was complying with them.

- Health Net employees continued to be responsible for maintaining their own business records;

- Responsibility for instituting and publicizing litigation holds rested in the Legal Department;

- A litigation hold, and the attendant "procedure to cease destruction of certain records, even at the Records Retention Schedule mandates destruction," was to be imposed when litigation "related to those records is pending, imminent, or in some cases, foreseeable."

Back Up Media For Disaster Recovery Purposes

Neither the March 1999 nor the July 2003 document policies address whether back up systems for electronic media, which were undisputedly designed for disaster recovery purposes, were "business records." Nor do the policies specifically identify "back up media" as business records.

In addition to the fact that policies did not address disaster recovery media, Health Net in-house counsel Phil Davis testified that prior to October 2004 he never thought about whether back up media for disaster recovery purposes were "business records" subject to the policy. Hilda Gonzalez testified that she did not recall a single conversation with outside counsel as to back up tapes in 2001 or 2002. There is no evidence in this record that anyone raised or considered back up media to be business records which needed special attention in connection with Wachtel/McCoy prior to October 2004.

Email Systems

Between 1999 and 2005, Health Net had users on a number of different email systems which had different features. For example:

Auto Delete

1.     Health Net users were on "Lotus Notes."  The March 1999 document policy
       required employees to "print and save" pertinent emails for document retention,
       noting the limited space in Lotus Notes.

2.     Health Net Northeast ("HNNE") was on "GroupWise" system for emails.  It had
       several pertinent features:

       a.     Between March 1999 and June 2004, HNNE had an "auto delete" feature
              in which any document in the active email server (which was not archived
              by the user) would be automatically deleted after 90 days.  In June 2004,
              HNNE switched to a 180-day automatic delete setting.[10]

       b.     GroupWise users back up tapes, generally monthly, but emails deleted
              between back ups were not retrievable.

4.     The Auto Delete feature on HNNE GroupWise was not discontinued until
       October 27, 2004 (which was one day after the first preservation notice specific to
       Wachtel/McCoy was sent and after Health Net counsel focused on the auto delete
       feature in those email systems).

Back Up Tapes

5.     There were different systems employed for recovery purposes at Health Net
       depending on the location.  Some examples are described infra, but the systems
       were different in operation and sophistication.  For example, ARC Servers were
       backed up monthly; TSM serviced systems had a 1 to 3 day back up but a 21 day
       overwrite.

---

[10]   This is an example of IT changing systems without speaking with counsel.

10603802.1

6.    As one specific example, Health Net created and maintained monthly back up tapes for Health Net West Coast until December 2000 and began instead to make daily tapes which were overwritten within 21 days.[11]

7.    IT made changes which affected users' back up, without telling them, which affected the availability of back up tapes.  For example, the in-house counsel responsible for this case, Hilda Gonzalez (who assumed that her emails were being backed up), was moved by IT from a server in Woodland Hills, California with monthly back up tapes to another server in Rancho Cordova, California which had a three-week overwrite.[12]

There are five reasons why there is not 100% restoration of emails for the 59 custodians[13]:

1.    the back up tape failed at the time it was made;

2.    the back up tape was lost;

3.    the back up tape was damaged and cannot be read;

4.    the back up tape was not located; and

5.    the user was, at least for some time during the relevant time frame, on a server which had automatic overwrite and thus there are no back up tapes for that period.

---

[11]    Another example of IT autonomy.
[12]    Res ipsa loquitor.
[13]    In addition, as noted, if a user deleted between back up tapes, it would never get to a back up tape.

**Health Net's Actions of Document Preservation in This Case**

        The Wachtel/McCoy Cases

        Wachtel was filed in July 2001 in state court.  The case was removed to federal court on or about August 31, 2001.

        McCoy was filed in federal court on April 23, 2003.

        Hilda Gonzalez was the senior litigation in-house counsel assigned to be the manager of the Wachtel/McCoy litigation, from its inception.  Hilda Gonzalez is responsible for this litigation and discovery.

        After Hilda Gonzalez received the first complaint, she took the following steps in conjunction with outside counsel.[14]

        Health Net sought to identify key custodians and documents and then, along with outside counsel, contacted them for information and documents.  Hilda Gonzalez also testified that she remembers both she and outside counsel telling the Wachtel custodians they identified to maintain documents including emails.

        Hilda Gonzalez described the process of document discovery as "extraordinary" and an "enormous task."

        Prior to October 2004, Hilda Gonzalez took no steps specific to Wachtel to insure that emails would be preserved because of a "standing MDL preservation notice that required all employees throughout the organization to maintain one copy of business records that included emails."[15]  While the MDL orders did require preservation of business records, the MDL order:

---

[14]    Primarily McCarter & English.  In late 2004, Epstein Becker also became involved in discovery.

[15]    Hilda Gonzalez also testified that there were periodic reminders going to the organization and to associates reminding them to maintain documents required by the MDL preservation order.
On December 15, 2000, Phil Davis sent a memo to Division Presidents, Division Counsel, Division Department Heads and Division Records Personnel.  A similar memo was sent on May 7, 2001 by Phil Davis to the same recipients.
*(Footnote continued on next page)*

NIXON PEABODY LLP

(1)     allowed Health Net to continue with its in-place ordinary business policies with regard to email disaster and auto delete (meaning that they could continue); and

(2)     did not apply to Health Net's dental and vision plans.

Hilda Gonzalez testified that Health Net (and she) relied on users to maintain their own emails (as set forth in the policies), and that there were no physical steps taken at Health Net to prevent users from choosing not to comply with the policy.  Hilda Gonzalez relied on the employees to comply with the "print and file" business records policy.  She did not talk with anyone in IT to make sure back up tapes would be maintained.

On October 26, 2004, as the result of a directive from the Court, Health Net sent out a specific preservation notice pertaining to Wachtel/McCoy.  The Legal Department also caused suspension of the auto delete function of the email systems that had that feature the next day.

During the whole time frame of discovery, Hilda Gonzalez never discussed back up tapes with anyone.  She did not discuss it with IT people.  She assumed that monthly or other periodic back up tapes were being created and maintained, although she did not believe they were required by discovery obligations.  She did not learn that there were months where there were no back up tapes until 2007.

Hilda Gonzalez did not take any steps to safeguard the tapes or to instruct anyone to do so, believing that it was the IT Department's responsibility to do so. The Health Net policies clearly require that the IT Department maintain computer tapes.

---

*(Footnote continued from previous page)*

On May 1, 2002, June 10, 2002, July 8, 2002, August 5, 2002, September 23, 2002, December 2, 2002, January 17, 2003, April 16, 2003, and July 15, 2003, Pamela Willis sent memoranda regarding the MDL document preservation obligations to All Plan Records Coordinators, Contacts and Personnel.  On October 14, 2002, Ms. Willis sent a Memorandum regarding the MDL document preservation obligations to All Managers and Above.

On April 1, 2003 and September 18, 2003, Dennis Bell and Paul Noble, respectively, sent Memoranda to All Associates regarding the MDL Document Preservation Order.

Hilda Gonzalez did not do anything to suspend the auto delete functions prior to October 2004, because she didn't know about it.

Health Net circulated a second preservation notice specific to the Wachtel/McCoy litigation on December 22, 2005.  At that time, the Wachtel/McCoy litigation was added to the Health Net training website.

## IT Knowledge

Even though Hilda Gonzalez was unaware of the particulars of back up tape systems, the IT people were well aware of the intricacies of the email systems and back up tapes.[16]  In October 2002, Health Net IT employees submitted affidavits in the MDL in connection with describing costs and efforts to comply with MDL discovery requests, which describe some (but not all) of the aspects of some of the email systems, including the processes for restoring email tapes.  (Neither affidavit discusses the auto delete issue.)

During our hearings, the IT people described a complicated system of different email systems and different back up systems which were in place in the Health Net entities during 1998 to 2005.   I will not provide all of the details here, but provide only a few examples.  In the 1998-2000 time frames, there were three different email systems being used by different Health Net entities:  MS Mail, GroupWise and Lotus Notes.  During this time frame and even going forward, the IT departments were merging the systems.  As noted earlier, the systems had different features.

In addition, the systems had different disaster recovery systems (back up tapes).  These disaster recovery systems also worked differently.  So, for example, between 1998 and 2000,

---

[16]     Babb and Hand declarations, October 9, 2002.

HNNE used ARC Serve.  That system generally took a back up tape every month (but even up to 2000, those tapes would be recycled after one year).

On the west coast, the Lotus Notes users used TSM for its back up tapes.  In general, TSM would be backed up every one to three business days, and then kept for seven iterations, which meant that there was a 21 day recycling system.  Indeed, TSM could not perform monthly back ups until 2003, because Health Net did not have that TSM technology.

It is clear that until the restoration process became underway, the IT personnel who knew the ins and outs of these systems did not describe them to counsel.   It is a fair inference that counsel did not insist on being educated, either.

The IT personnel also explained why some of the back up tapes are unusable.  First of all at times when the back up tapes are being made, they simply fail.  Secondly, the physical tapes are fragile and can break once made, at any point.

**<u>Summary</u>**

There was no communication from the Legal Department directly to IT instructing them prior to October 2004 to suspend any auto delete systems or to suspend any recycling of back up tapes.  Thus, the conclusion is that the responsibility for lack of preservation is shared by counsel and the IT Department.  Counsel, for the reasons summarized above, did not provide a specific instruction to the IT Department to suspend auto delete features, to stop override programs, and to otherwise preserve evidence.[17]  For its part the IT Department did not read any of the MDL notices (if at all) as requiring such evidence preservation nor did it communicate with the Legal Department what the intricacies of the email and recovery systems were.

---

[17]    The MDL Order permitted ordinary business policies to continue and counsel testified that none of those steps would have been required under the MDL.

**Other Matters**

The Recently Discovered Tapes

In early March 2007, after it had filed its final report on email restoration with the Court, Health Net found an additional 72 back up tapes and additional 74 home drive files.[18]  The discovery of these media was communicated to plaintiffs and to the Special Master soon after discovery.

Health Net thereafter took the steps it needed to restore, search and review the newly discovered media.  The responsive documents from 70 of the 72 tapes as well as from the 74 home drives were produced to plaintiffs on Saturday, May 12, 2007.  Responsive documents found on one additional GroupWise Archive home drive file was produced to plaintiffs shortly thereafter.  On May 25, 2007, defendant's counsel advised the Special Master that "all responsive documents from [the 72 tapes and 74 home drives] have been produced to plaintiffs." Counsel for Health Net also advised "Defendants are not aware of any additional disaster recovery tapes that may contain email for the [59] custodians for the temporal parameters set forth in the [May 5 Order]."  Plaintiff's counsel indicated that there were a "substantial number" of documents in the 35,000 pages recently produced which related to the 35 custodians and which have not been produced previously.

During the hearings, there was discussion between counsel as to the discovery of this media and its restoration.  I have no reason to doubt the representations of either counsel referenced above and thus conclude that the responsive emails were produced to plaintiffs between May 15 and 25, 2007 from the late discovered media.

---

[18]   In perhaps the understatement of the proceedings, Health Net counsel Hilda Gonzalez testified on March 15, 2007 that she was "very displeased" to learn of the newly found tapes.

Further, plaintiff's counsel has indicated that it intends to make an application to the Court for relief based on this late discovered media.

Compliance with Other Orders

As already noted, the parties appear to agree that I should make a determination as to whether Health Net has complied with the November 18, 2003 order and the August 18, 2004 order. Plaintiffs also suggest that I determine compliance with the Court's July 23, 2003 order.

I await the Court's instruction as to whether it would like me to take any further steps in this regard.

Privilege

At the hearing, there was agreement among counsel that Health Net counsel could testify with a limited waiver of privilege which would be for purposes of these proceedings only. I have filed the original with redactions through efiling and am submitting an original to the Court under seal. Counsel will receive, via email, both redacted and unredacted versions.

**Conclusion**

My findings related to the May 5, 2006 Order are reported above.

Respectfully submitted,

/s/

Cathy Fleming

cc:   Hon. Patty Shwartz
      Clerk of Court
      All Counsel (by email/see attached list)

10603802.1

Barry M. Epstein Esq.
Barbara G. Quackenbos Esq.
Sills Cummis Epstein & Gross

Jay Calvert Jr. Esq.
James DelBello Esq.
Colleen Meehan Esq.
Robert White Esq.
George McClellan Esq.
Morgan Lewis & Bockius, LLP

Herve Gouraige Esq.
Barry Kazan Esq.
Richard David Esq.
Epstein Becker & Green

John Gibbons Esq.
Kevin McNulty Esq.
Gibbons Del Deo

D. Brian Hufford Esq.
Robert Axelrod Esq.
Pomerantz Haudek Block Grossman & Gross

Jonathan Alpert Esq.
The Alpert Law Firm

Dave Stanley Esq.
The Cueno Law Group