NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZEV and LINDA WACHTEL, individually and on behalf of their minor children, TORY, JESSE, and BRETT WACHTEL, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC., and HEALTH NET OF NEW JERSEY, INC.,<br><br>Defendants. | Civil Action No.<br><br>01-4183 (MCA) (LDW)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |
| RENEE E. McCOY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC., and HEALTH NET OF NEW JERSEY, INC.,<br><br>Defendants. | Civil Action No.<br><br>03-1801 (MCA) (LDW) |

| | |
|---|---|
| STEWART SCHARFMAN, individually and as executor of the estate of his son, SPENSER SCHARFMAN, ZEV and LINDA WACHTEL, individually and on behalf of their children, TORY, BRETT, and JESSE WACHTEL, and RENEE McCOY, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>HEALTH NET, INC., HEALTH NET OF THE NORTHEAST, INC., HEALTH NET OF NEW YORK, INC., and HEALTH NET LIFE INSURANCE CO., INC.,<br><br>          Defendants. | Civil Action No.<br><br>05-301 (MCA) (LDW) |

Plaintiffs' counsel in these long-settled class actions, Wilentz, Goldman & Spitzer, P.A. ("Wilentz") and Pomerantz LLP ("Pomerantz") (collectively, "movants"), move for an order "equitably reallocating" the costs of proceedings before a special master. (Civ. A. No. 01-4183, ECF No. 922; Civ. A. No. 03-1801, ECF No. 921; Civ. A. No. 05-301, ECF No. 146).[1] Movants specifically seek reimbursement of costs from plaintiffs' former counsel, Sills, Cummis & Gross, P.C. ("Sills") and from two individual attorneys, formerly employed at Sills and then Wilentz, who worked on the actions while at those firms. The Court heard oral argument of the motion on August 17, 2015. For the reasons stated below, the motion is **DENIED**.

---

[1] All ECF numbers cited in this Opinion are from Civil Action No. 01-4183, and all cited page numbers are to the numbers printed on each page (as opposed to the ECF-assigned page numbers), unless otherwise indicated.

# I.

# FACTUAL BACKGROUND

*A. The Litigation And Settlement*

The instant motion arises out of a special master proceeding ordered by the Court long after the settlement of these three intensely litigated, consolidated class actions.[2] Attorneys Barry Epstein and Barbara Quackenbos reportedly conceived and commenced these class actions while they were attorneys with Sills, which firm long acted as co-lead class counsel. (Civ. A. No. 03-1801, ECF No. 927, at 1–2). The actions' dockets reflect that Epstein and Quackenbos actively litigated the actions from the filing of the first action in 2001 through the settlement of all three actions in July 2008. Other class counsel included Pomerantz as co-lead counsel with Sills, as well as attorneys from Cuneo Gilbert & Laduca, L.L.P., The Alpert Law Firm, P.A., and Siegel Brill Greupner Duffy & Foster P.A. Sills was co-lead counsel for the class until Epstein and Quackenbos left Sills to join Wilentz in July 2007. (ECF No. 802-1). Upon those attorneys' departure from Sills, Wilentz substituted for Sills as co-lead class counsel. (*See* ECF Nos. 802, 810). Epstein and Quackenbos remained at Wilentz until June 2013. (Civ. A. No. 03-1801, ECF No. 927 at 1).

After seven years of contentious litigation, the parties submitted a proposed settlement agreement to the Court in April 2008. The Honorable Faith S. Hochberg, U.S.D.J., granted final approval of the settlement, and the Court entered judgment on July 24, 2008. (ECF Nos. 868, 870). The settlement agreement included injunctive relief as well as a cash settlement of $215

---

[2] The class actions alleged breach of contract and violations of the Employee Retirement Insurance Security Act of 1974 ("ERISA") related to defendants' purportedly inappropriate reliance on a database, known as the Prevailing Healthcare Charge System database, to calculate the usual, customary, and reasonable fees for medical services and the consequent reduction of class members' reimbursements for such services.

million. Forty million dollars of that settlement was to be paid into a "prove-up fund" intended to satisfy claims by class members whose out-of-network medical costs had not been fully covered by defendants. While a third-party claims administrator, Berdon Claims Administration LLC ("Berdon"), was assigned to oversee distribution of the bulk of the settlement funds, defendant Health Net, Inc. ("Health Net") was to administer the prove-up fund. Any portion of the $40 million in the prove-up fund that went undistributed was to revert to Health Net.

As part of the settlement, class counsel sought a fee award of over $71 million. Judge Hochberg, noting "Class Counsel's skill and tenacity, and the excellent result," awarded class counsel a total of $69,720,000, calculated as approximately 32% of the monetary settlement value or approximately 28% of the estimated overall settlement value. (ECF No. 870 at 53). Judge Hochberg's Opinion also crosschecked the fee's propriety with the lodestar-multiplier method, noting a lodestar of $30,355,758.55 and an effective multiplier of just under 2.3. (*Id.* at 53–54). Her Final Order and Judgment directed Wilentz and Pomerantz, as then co-lead class counsel, to allocate the awarded fees amongst class counsel who had worked on the case. (ECF No. 868 at 5–6). They apparently divided the fees as follows: $41,967,206 to Sills, $22,568,324 to Pomerantz, and $4,103,332 to Wilentz.[3]

B. *Post-Settlement Proceedings*

In early 2012, the parties moved before Judge Hochberg to amend the settlement agreement to add $6.25 million to the main settlement pool, in resolution of disputes concerning Health Net's administration of the prove-up fund and an unexpectedly low number of successful claims against it. (Civ. A. No. 03-1801, ECF No. 878). As a result of that application, Judge Hochberg became

---

[3] The balance of the approved fees apparently were allocated to other firms that had worked on the actions. Interest on the fees was distributed proportionately to Wilentz, Pomerantz, and Sills in 2010.

aware that that only a small portion of settlement funds had been disbursed to the class members in the several years since she had approved the settlement. Health Net had paid out less than $1 million of the $40 million in prove-up funds, and none of the remaining settlement pool had yet been distributed.

At a hearing on May 29, 2013, Judge Hochberg expressed her dismay that "virtually nothing has been paid out to the members of the class, while . . . 72 million dollars, has been paid to counsel, and HealthNet is still sitting on over a hundred million dollars." (Civ. A. No. 03-1801, ECF No. 894, at 3). She directed that the claims administrator immediately distribute at least fifty percent of the main settlement pool, and she ordered the parties to show cause why the matter should not be referred to a special master for review of the following five issues:

> (1) a factual inquiry into the reasons for the length of time that elapsed between the Final Order and Opinion approving the Settlement in 2008 and the submission of the Motion to Amend the Settlement in 2012, including the reasons for the disputes, the merits of the disputes, and whether they could have been resolved in a more expeditious manner;
>
> (2) a factual inquiry into why no partial distributions were made from the Settlement Fund until after the hearing on May 29, 2013;
>
> (3) a factual inquiry into Health Net's rejections of claims against the Prove-Up Fund, including a statistical sampling of the rejections, to determine whether they were legitimate and made in good faith;
>
> (4) a recommendation as to whether Class Counsel should be replaced or ordered to repay any or all of the counsel fees it received based on the amount of the original Settlement and any diminution to date;
>
> (5) a recommendation as to whether sanctions should issue or any other disciplinary actions taken against either side, either Health Net or Class Counsel, on any grounds within the authority of this Court.

(ECF No. 885; *see also* Civ. A. No. 03-1801, ECF No. 894 at 50–51, 54).

After announcing her intention to refer the above issues to a special master, Judge Hochberg made several statements at the May 2013 hearing that are pertinent to this motion. She said as follows:

> The cost of this [special master proceeding] will not, not one cent will come out of the class cash fund. It will be shared jointly by the multiple on the attorneys' fees already awarded, which are more than generous, and HealthNet. And they will be subject to cost shifting if one side or the other is shown – is shown by the special master and adopted by this Court as having been not appropriate in executing the settlement.
>
> The next time and the only time you'll ever hear from me will be in reviewing the special master's Report and Recommendation. That's the inclination.
>
> Obviously, you have a right to be heard. That's what I'm telling you now, that's one of the reasons why I brought you into open court. We'll listen to, you know, we'll look at your briefs, you also have the right to suggest names of the special master.

(Civ. A. No. 03-1801, ECF No. 894 at 52).

Judge Hochberg's August 13, 2013 Order subsequently appointed Paul H. Zoubek, Esq. to act as special master (the "Special Master") to address these five issues, pursuant to Federal Rule of Civil Procedure 53. (ECF No. 895). This Order, in relation to the Special Master's fees, specifically directed as follows:

> Plaintiffs' share shall be paid by plaintiffs' counsel, not out of funds set aside for payment to class members. The charges of the Special Master initially shall be split equally between the plaintiffs and defendant. The Court shall retain the right to shift all or part of the charges to one party or the other after submission of the Special Master's Report.

(*Id.* at 5).

On August 15, 2013, two days after the appointment of the Special Master, Wilentz contacted Sills to advise that one of the issues the Special Master would be examining at the Court's direction was the potential clawback of counsel fees. (*See* ECF No. 921-5, at ECF pp. 8–

10). Wilentz's letter recounted that Judge Hochberg ordered "plaintiffs' counsel" to pay half the Special Master's fees and demanded that Sills "voluntarily participate in the payment of the Special Master's charges because it received the largest portion of the Court-awarded attorneys' fees received by plaintiffs' counsel." (*Id.* at ECF p. 9). The letter further proposed that each firm pay the Special Master in proportion to their share of the counsel fees received in the settlement. (*Id.*). Sills unambiguously and expressly rejected Wilentz's proposal by email of August 16, 2013. (*Id.* at ECF p. 19).

C. *The Special Master Proceeding*

Upon commencement of the special master proceeding, Wilentz reportedly requested that the Special Master order Sills to share in the plaintiffs' counsels' fee obligations for the special mastership. (ECF No. 945, at 55). The Special Master, apparently relying on the Court's August 13, 2013 Order specifying payment was to be made by "plaintiffs' counsel"—namely, Wilentz and Pomerantz—declined to order Sills' participation in fees. (*Id.* at 56). Neither Wilentz nor Pomerantz raised the issue again until filing this motion.

After extensive proceedings before the Special Master over the following year, he issued a detailed report and recommendation on September 12, 2014. (ECF No. 898). He recommended, with respect to his inquiry on the fourth item ordered by Judge Hochberg, that class counsel not be replaced and that the Court not order clawback of counsel fees already paid, opining there was not sufficient basis for the Court to order such remedies. Although noting that Federal Rule of Civil Procedure 60(b) permits the *sua sponte* amendment of a damages award, under certain extraordinary circumstances and within a reasonable time, he recommended no amendment of the fees awarded in these actions. The Special Master based this recommendation on a factual finding that class counsel in good faith believed that the prove-up portion of the settlement fund, though

potentially reversionary, would be exhausted by satisfaction of successful claims. (ECF No. 898-1 at 220).

The Special Master did note that "class counsel's conduct in connection with the claims administration was not without fault." But he also noted the significant efforts that class counsel undertook to assist the class during the administration of the settlement and concluded that "this is not a situation where class counsel abdicated their responsibilities after receiving their attorneys' fees." (*Id.* at 221–22). He further concluded that the changed circumstances required no repayment of the fees awarded to class counsel, as measuring the counsel fees against the realized (instead of initially projected) value of the settlement, with or without the proposed amendment, would not render the fees grossly disproportionate. (*Id.* at 225). He found that the diminished settlement value did nothing to alter the lodestar-multiplier calculation that Judge Hochberg originally used to crosscheck the reasonableness of the fees. (*Id.* at 226). Given the above findings, the Special Master concluded that there were not adequate grounds for replacing class counsel. (*Id.* at 226–28).

The Special Master observed that assessing sanctions against a party or counsel generally requires a finding of bad-faith conduct. (*Id.* at 229). As the conduct of both Health Net and class counsel during the administration of the settlement suggested no bad faith, he found that sanctions would be unwarranted. (*Id.* at 231, 233). While identifying several ways in which Berdon did not sufficiently assist class members and acknowledging that class counsel bore the ultimate responsibility for such assistance, despite delegating the task to Berdon, the Special Master concluded that such failures did not raise to the level of bad faith. (*Id.* at 234–38). Nonetheless, the Special Master recommended withholding from Berdon its fees charged for the cure period, when its failures to assist occurred. (*Id.* at 239). Emphasizing class counsel's ultimate

responsibility for the claims administration, however, he recommended that the Court "order class counsel to pay Berdon 50% of the amount withheld from Berdon during this period to be split equally between the Wilentz and Pomerantz firms." (*Id.* at 240).

In October 2014, both Health Net and class counsel moved the Court to adopt the Special Master's report and recommendation, and Berdon expressed its non-objection. (ECF Nos. 899, 900, 901). Judge Hochberg adopted the report and recommendation on January 30, 2015. (ECF No. 920). She also granted on March 3, 2015, after conducting a fairness hearing, final approval of the parties' jointly proposed amendment to the settlement agreement. (ECF No. 931).

## II.

## DISCUSSION

Wilentz and Pomerantz now move, pursuant to Federal Rule of Civil Procedure 53 and equitable principles, for an Order requiring Sills, and attorneys Epstein and Quackenbos individually, to reimburse a portion of the costs and fees that movants incurred in the special master proceeding.[4] Movants contend that it is inequitable for them to have borne all the labor and expense of the special master proceedings to protect former plaintiffs' counsel against a potential clawback of fees that movants argue was threatened by the Court's May 30, 2013 Order. They posit that Sills' receipt of more than sixty percent of the awarded fees, and Epstein's and Quackenbos' alleged receipt of millions in compensation from Sills, as a result of the settlement justifies a reallocation of the special master fees and expenses to require Sills, Epstein, and

---

[4] Movants report that they paid special master fees totaling $1,174,196, auditor fees of $646,324.02, court-reporter fees of $23,998.32, and other master-related fees of $16,020.38. Movants also point out that Wilentz expended 4427.1 hours of time in the special master proceedings, worth $2,431,008, and that Pomerantz put in 1363.45 hours, worth $1,130,232.25.

9

Quackenbos to share the fees and expenses in proportion to the financial benefit they received from the settlement.

Federal Rule of Civil Procedure 53 permits the Court to allocate special master fees among the parties and to amend such an allocation after the proceeding "to reflect a decision on the merits." Fed. R. Civ. P. 53(g). The Court, in rendering such a decision, must consider "the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." *Id.* The Court is afforded broad discretion in making a determination as to whether reallocation is appropriate. *See Luppino v. Mercedes Benz USA, LLC*, Civ. A. No. 2:09-cv-05582 (DMC) (JAD), 2013 WL 5025229, at *6, 2013 U.S. Dist. LEXIS 130228, at *18 (D.N.J. Sept. 11, 2013); *Agostino v. Quest Diagnostics, Inc.*, Civ. A. No. 04-4362 (SRC), 2012 WL 2344865, at *4, 2012 U.S. Dist. LEXIS 85431, at *9–10 (D.N.J. June 20, 2012); *Thabault v. Chait*, Civ. A. No. 85-2441 (HAA), 2009 WL 69332, at *16, 2009 U.S. Dist. LEXIS 576, at *50 (D.N.J. Jan. 7, 2009).

Before reaching the issue of whether *reallocation* of fees under Rule 53 is appropriate, however, the Court views it as informative first to examine what was intended by the Court's Order *initially allocating* the costs and fees of the special master proceeding. After all, one of movants' primary arguments—that those counsel who benefited financially from the class settlement in 2008 were correspondingly obliged to pay the fees and expenses later incurred in protecting those fees—equally could have been made upon appointment of the Special Master as after the conclusion of his work.

The Court's August 13, 2013 Order Appointing Special Master explicitly allocated fees and costs of the Special Master equally between plaintiffs and defendants, with "Plaintiffs' share [to] be paid by plaintiffs' counsel." (ECF No. 895 at 5). There clearly is no basis in this language

upon which the Court fairly could infer that Judge Hochberg intended to impose costs and fees of the Special Master proceeding upon plaintiffs' former counsel at Sills, much less upon individual attorneys Epstein and Quackenbos. "Plaintiffs' counsel" at that time was Pomerantz and Wilentz. Sills had not been plaintiffs' counsel since 2007, which Judge Hochberg well knew given her many years of handling as the assigned District Judge what she termed this "scorched earth litigation." (Civ. Action No. 03-1801, ECF No. 894 at 3). Quackenbos and Epstein (although neither they nor Wilentz had filed withdrawals of their appearance in these actions when they left Wilentz in June 2013) were no longer employed at Wilentz in August 2013 and thus were no longer attorneys employed by "plaintiffs' counsel"—i.e., Wilentz or Pomerantz.

Movants did not seek from the Court a clarification or reconsideration of the August 13, 2013 Order that would have required Sills, Epstein, or Quackenbos to participate in the fees and expenses of the special mastership. This is despite the Court's invitation at the May 29, 2013 hearing for counsel summoned to the hearing—Wilentz and Pomerantz (not Sills)—"to be heard" on what she had proposed about the costs of the special mastership. (*Id.* at 52). To the extent that current class counsel found ambiguous Judge Hochberg's reference at the May 2013 hearing to costs of the Special Master being "shared jointly by the multiple on the attorneys' fees already awarded," a concept that the Court did not later incorporate in the superseding August 13, 2013 Order, they did nothing contemporaneously to pursue a clarification from the Court.

Instead, Wilentz chose to pursue informal means of arranging a different payment structure. Wilentz contacted Sills in writing shortly after the August 13, 2013 Order was issued to seek Sills' "voluntary" participation in paying for the Special Master. Sills promptly and unambiguously refused. Wilentz's subsequent request of the Special Master that he order Sills' participation in payment of his fees likewise was rejected by the Special Master. (ECF No. 945 at

11

56). Similarly, the Special Master clarified with Wilentz's counsel on the record in September 2013 that Epstein and Quackenbos were no longer counsel to plaintiffs and their participation in the special master proceedings, if at all, would be as fact witnesses and not counsel. (Civ. A. No. 03-1801, ECF No. 927 at 2–3). He declined Wilentz's and Pomerantz's request to bill Epstein and Quackenbos for his fees. (ECF No. 921-1, at 2). Having thus been rebuffed in their informal attempts to compel the financial participation of former counsel in the special master proceedings, Wilentz and Pomerantz opted not to make further efforts to seek to have Sills, Epstein, and Quackenbos held responsible for the Special Master's fees and instead decided to await completion of the proceedings to seek reallocation of the fees under Rule 53. (*See id.* at 56–59).

The motion thus turns on whether there is adequate basis under Federal Rule of Civil Procedure 53 or equitable principles to order reallocation of fees and expenses to Sills, Epstein, and Quackenbos under the facts and circumstances presented here. Movants' arguments under Rule 53 seem to focus on two considerations for reallocation: (1) "the extent to which any party is more responsible than other parties for the reference to a master"; and (2) the "parties' means." Fed. R. Civ. P. 53(g)(3). Movants further argue on equitable grounds that reallocation is justified because they protected non-movants' fees from a threatened clawback. The Court addresses each argument in turn.

*Whether One Party Was More Responsible Than The Other For The Special Mastership*

At the outset, the Court notes that it is by no means clear that this Rule 53(g) consideration even applies to the instant motion, as the movants do not seek to reallocate fees among "the parties," but rather among former and current counsel of the same parties. Regardless, the Court will consider this argument, even if it can fairly be viewed as based more on equitable than statutory grounds.

Movants essentially contend that Sills, and presumably Epstein and Quackenbos, are "responsible" to some extent for the appointment of the Special Master because the diminished actual value of the settlement resulted from flaws inherent to the prove-up fund, which allegedly was developed conceptually while Sills was co-lead counsel.[5] Sills refutes this characterization and argues that the problems that led to the appointment of the Special Master resulted from failures in *administering* the prove-up fund after Sills' departure from the case, not from the basic structure of the prove-up fund. As Sills argues, the Special Master's report and recommendation, which Judge Hochberg adopted, found fault on the part of Berdon and "class counsel" due to their failures affirmatively to provide class members with assistance in satisfying claims against the prove-up fund.[6] The Special Master identified, however, no intrinsic problem with the prove-up fund as causing the diminished settlement value.

The Special Master specifically noted that there was "no evidence that class counsel knew at the time that it entered the Settlement Agreement that the amount of documented claims against the Prove-Up Settlement Fund would be as limited as it ultimately was" and that "class counsel thought that the Prove-Up Settlement Fund would be exhausted." (ECF No. 898-1 at 220). Indeed, an argument that the prove-up fund was erroneously overvalued from early in its development is refuted by assertions of the instant movants, as well as Berdon, at the May 29, 2013 hearing that

---

[5] Movants acknowledge, however, that the decision to include the prove-up fund in the settlement was not made until it was included in a memorandum of understanding *after* (albeit shortly after) Wilentz had substituted in for Sills. (ECF No. 921-1 at 2).

[6] Despite assigning this fault to Berdon and class counsel, the Special Master made clear that he did not view their failures as the primary problem. He commenced the relevant portion of his report with the statement, "Had my investigation established that the reversion of the remaining amount from the Prove-Up Settlement Fund was caused solely or even substantially by class counsel's failure to assist claimants and essentially amounted to an abandonment of class members at this critical stage of the settlement process, I would not hesitate to recommend that the award of counsel fees be reopened and a portion of the fees be clawed back and made available to the class in the Cash Settlement Fund." (ECF No. 898-1 at 220).

13

initial claims against the prove-up fund amounted to $60 million. (*See* Civ. A. No. 03-1801, ECF No. 894 at 21, 29–30, 46). Consequently, no basis exists to support a finding that Sills' role in developing the settlement, rather than movants' subsequent administration, caused the discrepancy between the settlement's projected and actual values that in turn contributed to appointment of the Special Master. Therefore, it does not appear that Sills', Epstein's, or Quackenbos' development of the prove-up fund rendered them responsible at all, much less "more responsible" than Wilentz or Pomerantz, for the reference to the Special Master.

To the contrary, it is patently apparent from the Court's Orders and the transcript of the May 29, 2013 Hearing before Judge Hochberg that what precipitated the special mastership was the Court's profound disappointment to learn in 2013 that only a small percentage of the settlement funds that it had approved years earlier, in 2008, had yet been paid to the class members. The Court clearly attributed this to problems in the administration of the settlement between 2008 and 2013, a period when Sills was no longer counsel and while Epstein and Quackenbos were members of Wilentz. (*See generally* Civ. A. No. 13-1801, ECF No. 894). Moreover, the Order to Show Cause that resulted in the appointment of the Special Master addressed primarily the issues surrounding claims administration: the reasons for delays in distributions to class members; the reasons for and causes of delay in resolving claims-administration disputes; the propriety of high rejection rates for prove-up-fund claims; whether class counsel should be replaced; and whether class counsel or Health Net should be sanctioned. (*See* ECF No. 885). Because it is abundantly clear that neither Sills nor Epstein and Quackenbos individually were "more responsible" than Wilentz and Pomerantz for appointment of the Special Master, there is no basis on that ground to order reallocation of the special mastership costs to them.

*Consideration Of The Parties' Means To Pay The Special Master Costs*

Movants further argue that an obligation on the part of Sills, Epstein, and Quackenbos to share the costs of the special mastership arose by virtue of the benefit each had received by sharing in the settlement.[7] As with the other 53(g) criteria, consideration of "the parties' means" appears inapplicable to nonparties Sills, Epstein, and Quackenbos. Nevertheless, the Court considers the equitable arguments raised by movants.

There is no doubt that Sills received a large fee award in the settlement. Although the compensation paid by Sills to Epstein and Quackenbos is not of record, the Court will assume *arguendo* that they received substantial compensation as a result of the settlement. But in the Court's view, their receipt of fees did not *per se* obligate them to contribute at all to the special master proceeding. As movants concede, Sills, Epstein, and Quackenbos were compensated in the settlement as a result of what they *already* had contributed to the litigation over the years and their role in reaching a favorable settlement for the class. Movants admit that "Epstein/Quackenbos did vigorously engage with Health Net and zealously advocated on behalf of the Class from final approval of the Settlement in August 2008 until their departure from Wilentz in July 2013." (ECF No. 921-1 at 12). Movants also acknowledge repeatedly Epstein's and Quackenbos' substantial contributions to the underlying litigation. (*Id.* at 4, 5). Six years of their efforts and contributions to the class were made while they were attorneys at Sills. Simply stated, Sills, Epstein, and Quackenbos were compensated in 2008 for their previous contributions. Movants' argument that their compensation carried with it an implied obligation to contribute financially to later

---

[7]  Movants allege upon "information and belief" that Epstein and Quackenbos received from Sills approximately $19 million of the settlement fees pursuant to an agreement between Epstein and Sills. (ECF No. 921-1 at 5). The amount of their compensation, however, was never established in the special master proceeding. For purposes of the instant motion, the Court finds the amount of their compensation immaterial to the analysis of the issues presented on this motion.

proceedings that arose out of a period when Sills was no longer counsel, and while Epstein and Quackenbos worked on the actions as members of Wilentz, is unconvincing.

*The Possibility Of Clawback*

Finally, movants argue that Sills, Epstein, and Quackenbos should in equity be required to contribute to the costs of the special master proceeding because their fees were subject to clawback and movants expended considerable efforts preventing that result. Movants base this argument on item (4) of the Court's August 13, 2013 Order, requiring the Special Master to make "a recommendation as to whether Class Counsel should be replaced or ordered to repay any or all of the counsel fees it received based on the amount of the original Settlement and any diminution to date." (ECF No. 885). While Judge Hochberg's statement fairly could have created concern that she would consider a clawback of fees from counsel who had benefitted from the settlement, there are several reasons that this argument does not support the remedy movants seek. Foremost among these reasons is that "class counsel" at the time of the August 2013 Order did not include Sills, and it certainly did not include *individual* attorneys Epstein and Quackenbos, who at that time were not even attorneys at class counsel firm Wilentz. The interpretation of "class counsel" as referring only to current counsel is further supported by the portion of item (4) that also instructed the Special Master to make a recommendation as to whether "Class Counsel should be replaced," which could only refer to current counsel.

Moreover, the Court's not having ordered Sills to appear at the May 2013 hearing nor referencing the firm specifically in the August 2013 Order Appointing Special Master further compels the conclusion that the Court was not considering a clawback of fees from former class counsel. A clawback of fees from Sills, which had not been summoned to the May 2013 hearing and was not required to participate in the special master proceedings, would have been fraught

16

with due process concerns. Such concerns would not have been lost on an experienced jurist like Judge Hochberg.

Nor is the Court convinced from an equity perspective that Wilentz and Pomerantz bore any greater burden in protecting Sills' fees from clawback than they were required to expend in any event to protect their own fees. Movants have not pointed to any further work done or arguments made by them on behalf of Sills that went beyond the efforts needed to defend their own fee awards. Indeed, the Special Master's report and recommendation makes clear that the entire focus of the special master proceeding was the administration of the settlement starting in 2008, when Sills was no longer counsel. The Special Master's report mentions Sills only in passing and not in any substantive discussion of problems with the settlement. (*See generally* ECF No. 898, at 1–3).

The Court further notes that, while Wilentz, in making its equity argument, relies on the fact that the labor value and costs of the special mastership to it were disproportionate to the small percentage of fees it received in the settlement, this arguably unfavorable ratio of benefits to costs appears to be at least partly self inflicted. Notably, Wilentz apparently struck a labor-sharing arrangement with Pomerantz in the special master proceeding that caused it to shoulder five times more of the labor burden than Pomerantz, and it divided equally with Pomerantz the Special Master's and auditor's fees. This was despite Pomerantz's having received fees more than five times greater than Wilentz's in the settlement. When questioned at oral argument about this division of labor and expenses between Wilentz and Pomerantz, movants responded that the deal had been struck between movants' firms "by agreement and for convenience." (ECF No. 945 at 22). While that was certainly their prerogative, Wilentz's decision to contribute more heavily

17

overall to the special master proceedings than Pomerantz cannot in fairness inure to the detriment of Sills, Epstein, and Quackenbos.

What remains of movants' argument is essentially their criticism of Sills' business judgment in declining to participate in the special master proceeding when Sills' fees might be in jeopardy. But even if Sills' fee award could fairly have been viewed as subject to clawback by virtue of Judge Hochberg's statements at the May 2013 hearing and the August 2013 Order, that did not give rise to an obligation on Sills' part to participate in the special master proceeding when neither the Court nor the Special Master had ordered Sills' participation. It was Sills' option under these circumstances to act upon its contrary view that its fees were not in jeopardy and not "voluntarily" share in the costs of the special mastership.

As for Epstein and Quackenbos individually, they did participate in the special master proceedings by means of Quackenbos' appearance on their behalf[8] as a witness. The Special Master made clear that Epstein and Quackenbos, who were no longer at Wilentz, would not act as attorneys in the proceedings but rather only as witnesses. He declined to invoice Quackenbos and Epstein for his fees. (Civ. A. No. 13-1801, ECF No. 927 at 2–3; ECF No. 921-1 at 2). Epstein and Quackenbos participated in the special master proceedings to the extent called as witnesses. There was no additional obligation on their part to contribute to the special master fees based on a hypothetical threat of clawback of compensation they had received as individual attorneys as part of a compensation agreement with Sills. The assertion that these individual attorneys' fees were subject to clawback by virtue of anything contained in the record of these actions is unsupported.

---

[8]  Epstein and Quackenbos reportedly had by that time formed their own firm after leaving Wilentz.

## CONCLUSION

For the foregoing reasons, the Court finds no basis in law or equity on which to order reallocation of the special master fees to Sills, Epstein, or Quackenbos. Therefore, the motion is hereby **DENIED**. The Clerk of Court accordingly is directed to terminate the motion, which was filed in several different docket numbers, as follows: ECF No. 922 in 01-CV-4183, ECF No. 921 in 03-CV-1801, and ECF No. 146 in 05-CV-301.

**IT IS, on this 8th day of October 2015, SO ORDERED.**

*/s/ Leda Dunn Wettre*
**Hon. Leda Dunn Wettre**
**United States Magistrate Judge**

Original: Clerk of the Court
cc: Hon. Madeline Cox Arleo, U.S.D.J.
All Parties